STATE of Minnesota, Respondent,

v.

Elmer Mark MELDRUM, Appellant.

No. A05–2365.

Court of Appeals of Minnesota.

Nov. 28, 2006.

Review Denied Jan. 24, 2007.

Mike Hatch, Attorney General, Tibor M. Gallo, Assistant Attorney General, Saint Paul, MN, and Janelle Kendall, Stearns County Attorney, St. Cloud, MN, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Assistant Public Defender, Minneapolis, MN, for appellant.

Elmer Mark Meldrum, St. Cloud, MN, pro se appellant.

Considered and decided by PETERSON, Presiding Judge, RANDALL, Judge, and KALITOWSKI, Judge.

# OPINION

RANDALL, Judge.

This is an appeal from appellant's conviction of domestic assault, Minn.Stat. § 609.2242, subds. 1(1), 4 (2004); terroristic threats, Minn.Stat. § 609.713, subd. 1 (2004); and obstructing legal process or arrest, Minn.Stat. § 609.50, subd. 1(2) (2004). Appellant argues that the district court committed plain error by failing to provide a cautionary instruction upon the state's introduction of relationship evidence. Appellant, in a pro se supplemental brief, raises additional issues challenging his conviction, which we found to be without merit. We affirm here because the absence of a cautionary instruction did not constitute reversible error.

# FACTS

Appellant Elmer Mark Meldrum was convicted in Stearns County District Court of domestic assault, Minn.Stat. § 609.2242, subds. 1(1), 4 (2004); terroristic threats, Minn.Stat. § 609.713, subd. 1 (2004); and obstructing legal process or arrest, Minn. Stat. § 609.50, subd. 1(2) (2004). Appellant's convictions arose from an altercation with his wife, Sandra Meldrum, on March 25, 2005. Appellant and Sandra, married 16 years, resided outside the city limits of Cold Spring, Minnesota, with their 13–year–old daughter, S.M.

All three family members were home on March 25, 2005. Sandra, recovering from foot surgery, was confined to sitting in a recliner elevating her foot. Appellant was supposed to be caring for his wife but began binge drinking two days prior, on March 23, 2005. Sandra and S.M. knew appellant had been drinking because of his changed behavior patterns. Appellant "has a tendency to become more argumentative, belligerent, and sometimes aggressive . . . like he's a different person."

S.M. was at a neighbor's house when the altercation between her parents began but later returned home after a friend reported hearing her parents arguing. Sandra "called" appellant on his excessive drinking and appellant became aggressive towards Sandra. Appellant lay across Sandra's legs, pinning her down in the recliner. Appellant refused to allow Sandra to move even after her persistent requests that appellant "move away [and] back off." Appellant spoke incompletely, repeatedly asking Sandra "what if?" or "guess what?" Appellant grew angrier, expecting Sandra to answer. A few times appellant told Sandra, "[y]ou know, I could hurt you."

As appellant continued pinning her down, Sandra grew uncomfortable and afraid. Sandra feared appellant would hurt her or himself. Sandra's fears stemmed from appellant's level of intoxication as well as past situations where appellant had grown out of control, shoving and choking her.

Although this altercation primarily involved verbal threats, appellant, more than once, grabbed Sandra by the chin, firmly turning her head towards his. Appellant continued lying across Sandra's legs, keeping his face within a foot or two of hers. The altercation lasted three hours with appellant screaming at Sandra and "literally spitting and drooling like a crazy man."

S.M. returned home and witnessed appellant holding Sandra captive in the chair. S.M. found Sandra visibly upset and screaming at appellant to get off her. Appellant told S.M. to leave or else she

"would pay" but Sandra requested S.M. stay. Afraid of what appellant might do next, S.M. ran to the neighbor's house, called the police, and told them appellant was threatening her mother.

Upon arrival at the Meldrum residence, Cold Spring police officers Eric Boucher and Delroy Hageman heard arguing and a female in distress. After no one responded to their knocking, Boucher and Hageman entered the open front door. The officers found Sandra crying in a bathroom and appellant seated in a chair. Sandra reported what had happened—appellant threatened her, grabbed her beneath the throat, forced her to look at him, and held her down against her will. Sandra appeared "completely terrified" to the officers. The officers decided to arrest appellant for domestic assault at which point appellant became uncooperative and argumentative. Appellant resisted arrest and was tasered after approaching one of the officers.

Prior to trial, the district court denied a request for use of *Spreigl* evidence and ruled that appellant's prior convictions could not be used for impeachment under the *Jones* factors.[1] However, the court ruled that evidence of appellant's four prior domestic abuse convictions were admissible as "relationship evidence" under Minn.Stat. § 634.20 (2004). Appellant's four prior convictions include two domestic abuse gross misdemeanors in 1997 and felony domestic abuse convictions in 1999 and 2002.

At the end of trial, the court indicated that no *Spreigl* evidence cautionary instruction would be given unless counsel could provide a reason to include it. Neither counsel provided a reason. Again, before instructing the jury, the court questioned whether either counsel had any additions or corrections to the jury instructions. Neither party commented.

## ISSUES

1. Did the district court commit plain error by failing to give the jury a cautionary instruction on evidence of appellant's prior convictions admitted as relationship evidence?

2. Does appellant state any valid claim in his pro se supplemental brief?

## ANALYSIS

### I. Plain Error

██ District courts are granted "considerable latitude" in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001) (citation omitted). Where a defendant fails to object to the jury instructions at trial, a reviewing court may "reverse if the instructions were misleading or confusing on fundamental points of law such as burden of proof and presumption of innocence." *State v. Butler,* 295 N.W.2d 658, 659 (Minn.1980).

██ Absent an objection at district court, an appellate court may only review for "plain error." *State v. Crowsbreast,* 629 N.W.2d 433, 437 (Minn.2001); *see* Minn. R.Crim. P. 26.03, subd. 18(3) ("No party may assign as error any portion of the charge or omission therefrom unless

1. *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965); *State v. Jones,* 271 N.W.2d 534 (Minn.1978).

the party objects thereto before the jury retires to consider its verdict."); *see also* Minn. R.Crim. P. 31.02 ("Plain errors or defects affecting substantial rights may be considered by the court ... on appeal although they were not brought to the attention of the trial court."). Plain error exists "only if the trial court's failure seriously affected substantial rights and only if the error was prejudicial error." *State v. Glidden*, 455 N.W.2d 744, 747 (Minn.1990).

Under a review for plain error, an unobjected-to alleged error will only be corrected upon a finding of the following: (1) error; (2) it is plain; and (3) it affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If the three-prong test is satisfied, the error should be corrected only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)) (quotations omitted); *see Griller*, 583 N.W.2d at 741 (holding that appellant bears the "heavy burden" of showing that the error was prejudicial to the degree that "giving of the instruction in question would have had a significant effect on the [jury's] verdict").

Appellant claims the district court erred by failing to provide the jury with a cautionary instruction related to the "relationship evidence," thereby entitling him to a new trial. We disagree.

In 1985, the legislature enacted Minnesota Statute § 634.20, granting the district court discretion to admit "relationship evidence," evidence of an accused's similar conduct of domestic abuse, after determining that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *State v. McCoy*, 682 N.W.2d 153, 159 (Minn.2004).

Relationship evidence is similar to, but is not considered, *Spreigl* evidence. *See id.* (stating that relationship evidence is at least "conceptually distinct from *Spreigl* evidence" because the latter is often evidence of an unrelated crime whereas the former is evidence of prior conduct between the accused and the alleged victim and may be offered to put the crime charged in the relationship between the two). However, the purpose of each type of evidence is similar. *See State v. Henriksen*, 522 N.W.2d 928, 929 (Minn.1994) ("Evidence bearing on the defendant's relationship with the victim, including other-crime evidence, is often admitted in terroristic threats and domestic abuse cases. Such evidence puts the alleged criminal conduct of the defendant in context, may help the jury in assessing the defendant's intent and motivation, and may serve other valid purposes.") (citations omitted); *State v. Babcock*, 685 N.W.2d 36, 40 (Minn.App. 2004), *review denied* (Minn. Oct. 19, 2004) (stating that *Spreigl* evidence is not admissible to prove a defendant's character in order to show action in conformity therewith, but may be admitted for the limited purpose(s) of showing absence of mistake, intent, knowledge, common plan or scheme, and identity). Additionally, courts typically apply a *Spreigl*-type analysis to relationship evidence. *See State v. Bauer*, 598 N.W.2d 352, 364 (Minn.1999).

Minnesota Rules of Evidence 105 states that "[w]hen evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Rule 105 addresses the specific situation where a particular jury instruction is requested. A specific instruction regarding the permissible use of *Spreigl* evidence should be given

upon request. *State v. Broulik,* 606 N.W.2d 64, 69 (Minn.2000); *see State v. DeYoung,* 672 N.W.2d 208, 212 (Minn.App. 2003) (holding that the district court erred by denying appellant's request for a specific limiting instruction); *see also Babcock,* 685 N.W.2d at 41 (holding that the court erred by failing to instruct the jury on the limited purposes for which *Spreigl* evidence was admitted upon request to do so). Procedural requirements for *Spreigl* evidence require a general jury instruction limiting the use of such evidence:

> [b]oth at the time the evidence is received and in the final charge, the court should admonish the jury that the testimony is received for the limited purpose of establishing identity. It is the court's duty to advise the jury in unequivocal language that defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

*Broulik,* 606 N.W.2d at 68 (quoting *State v. Billstrom,* 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967)). Criminal jury instructions 2.01 and 3.16 utilize the *Billstrom* language, omitting only the reference to "identity," and are currently used to provide a general cautionary instruction. Upon the admission of *Spreigl* evidence a limiting instruction is necessary to ensure that jurors do not convict the defendant of the uncharged *Spreigl* offense rather than the charged offense. *See State v. Slowinski,* 450 N.W.2d 107, 114–15 (Minn.1990) (holding that the reading of a cautionary instruction to the jury before testimony and at the close of the entire case lessened the probability of undue weight being given to the evidence); *State v. Orfi,* 511 N.W.2d 464, 471 (Minn.App.1994) (stating district court minimized prejudice by narrowly limiting scope of testimony and giving cautionary instruction at time evidence was admitted and at close of trial), *review denied* (Minn. Mar. 15, 1994).

 The purpose of a cautionary instruction is to ensure that the jury uses the other-crimes evidence solely for the permissible purpose and not to convict the defendant due to the prior bad acts. *State v. Williams,* 593 N.W.2d 227, 237 (Minn. 1999). The failure of the trial court to give those instructions in the absence of a request is not reversible error. *Id.* ("[A]lthough the failure to give limiting instructions [in connection with the admission of relationship evidence] in certain circumstances may constitute plain error, we hold that it does not do so in this case."), *cert. denied,* 528 U.S. 874, 120 S.Ct. 180, 145 L.Ed.2d 151 (1999). Upon admittance of relationship evidence, even in the absence of a request from counsel, the district court should provide a cautionary instruction when the evidence is admitted, and again during its final charge to the jury. *Bauer,* 598 N.W.2d at 365. Relationship evidence and *Spreigl* evidence are analogous. The danger both present is so significant that the precaution of providing a limiting instruction, as in *Spreigl,* should be applied to relationship evidence.

 Here, appellant argues that the absence of a cautionary instruction led the jury to improperly utilize the evidence of his four prior convictions. Specifically, appellant is concerned that (1) the prosecutor focused extensively on the evidence during closing arguments to the extent that it likely became a focal point during jury deliberations; (2) the nature of the prior convictions rendered them particularly susceptible to misuse by the jury; and (3) reference to appellant owning a firearm may have led the jury to perceive appellant as posing a greater danger and consequently deserving of punishment.

 This court must look at the entire record to determine if there is a significant

likelihood that the jury misused the evidence, resulting in the evidence improperly affecting the verdict. *State v. Frisinger,* 484 N.W.2d 27, 31 (Minn.1992). Here, two eyewitnesses testified regarding the altercation on March 25, 2005; a 911 call resulted from S.M.'s fear of appellant; and further testimony from responding officers provided evidence supporting appellant's conviction. Sandra testified regarding her 16–year marriage to appellant and referred to appellant as a lovable and good man when sober. The record indicates that all other jury instructions were properly given, including the presumption of appellant's innocence, the state's burden of proof beyond a reasonable doubt, and defining the elements of each charge. And, although the prosecutor did extensively refer to and summarize each of appellant's prior convictions, he never suggested an improper use of the other-crimes evidence. *See State v. Bissell,* 368 N.W.2d 281, 283 (Minn.1985) (concluding that the failure to give a cautionary instruction was not prejudicial since "no one suggested that the evidence should be used for any [improper] purpose"). Instead, the prosecutor carefully used language such as "relationship with a history ..." and being "indicative of [appellant's] intent and motive."

A cautionary instruction is strongly preferred. However, the absence thereof does not *automatically* constitute plain error. Instead, other evidence offered during trial may negate the allegation that the probative value of other-crimes evidence is outweighed by its potential for unfair prejudice. Such is the case here where appellant failed to object to the lack of a cautionary instruction and other evidence presented at trial supported appellant's conviction. In addition, the prosecution did not suggest an improper use of the other-crimes evidence.

## II. Pro se Issues

Appellant raises six challenges in his pro se supplemental brief arguing that his convictions should be reversed. We find appellant's arguments to be without merit.

Pro se litigants are generally held to the same standards as attorneys. *Liptak v. State,* 340 N.W.2d 366, 367 (Minn.App.1983). If the brief does not contain an argument or citation to legal authority in support of the allegations raised, the allegation is deemed waived. *State v. Krosch,* 642 N.W.2d 713, 719 (Minn.2002). Also, if a brief fails to make or develop any argument at all, the issue asserted is considered waived. *State v. Butcher,* 563 N.W.2d 776, 780–81 (Minn. App.1997), *review denied* (Minn. Aug. 5, 1997). Finally, if an allegation is outside of the record, it must be disregarded. *See* Minn. R.Crim. P. 28.02, subd. 8 (stating that "[t]he record on appeal shall consist of the papers filed in the trial court, the offered exhibits, and the transcript of the proceeding, if any").

First, appellant claims that 60 hours of recorded conversation between appellant (in jail) and his wife should have been played at trial. This assertion remotely refers to the record, however, it is deemed waived because appellant fails (1) to provide a record of the conversations; (2) to state a probative argument as to why the tapes should be admitted; and (3) to provide any legal authority supporting their admission. *See Krosch,* 642 N.W.2d at 719; *see also State v. Palmer,* 391 N.W.2d 857, 859 n. 1 (Minn.App.1986) (holding that the party seeking review has a duty to ensure that the appellate court is presented with a record sufficient to show the alleged error and all matters necessary to decide the question presented).

Second, appellant claims ineffective assistance of counsel because his attorney

failed to effectively argue against the admission of appellant's prior convictions and to ensure that the district court judge was removed for cause. These arguments lack merit because in order to succeed, appellant must affirmatively prove that: (1) "his counsel's representation 'fell below an objective standard of reasonableness'" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). Appellant fails to make such a showing. Further, this claim is not supported by the record.

■ Appellant's third, fourth, and sixth claims, that the district court judge should have recused himself, that appellant was not competent to stand trial, and that a letter submitted by appellant's wife should have exonerated him, respectively, lack merit. These allegations are outside the record and appellant fails to provide any supporting legal authority. Therefore, these allegations are deemed waived.

Finally, appellant asserts that the police officers intentionally lied and falsified information. These arguments lack merit because the jury is the exclusive judge of witness credibility and determine the weight of the evidence. *Dale v. State*, 535 N.W.2d 619, 623 (Minn.1995).

## DECISION

When relationship evidence is admitted, a cautionary instruction is strongly preferred, however, the absence thereof does not automatically constitute plain error. The absence of a cautionary instruction here did not constitute reversible error. Other evidence offered during trial negated appellant's allegation that the probative value of the relationship evidence was outweighed by unfair prejudice. The issues raised by appellant in his pro se supplemental brief are without merit.

**Affirmed.**