STATE of Minnesota, Respondent,

v.

**William Edward BARNSLATER, Appellant.**

No. A09–1447.

Court of Appeals of Minnesota.

Aug. 17, 2010.

**648**

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Nicole E. Nee, Assistant County Attorney, Hastings, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; KALITOWSKI, Judge; and COLLINS, Judge.*

## OPINION

WRIGHT, Judge.

Appellant challenges his convictions of engaging in a pattern of harassing conduct, Minn.Stat. § 609.749, subd. 5 (2008), and violation of an order for protection, Minn.Stat. § 518B.01, subd. 14(d)(1) (2008), arguing that the district court abused its discretion by admitting evidence of prior acts of domestic abuse as relationship evidence pursuant to Minn.Stat. § 634.20. Alternatively, appellant argues that the district court committed reversible error by failing to give a cautionary instruction to the jury regarding the relationship evidence. We affirm.

## FACTS

Appellant William Barnslater and J.B. began a romantic relationship in approximately 1997 and lived together, with the exception of some brief periods apart, until June 2008. Barnslater was periodically violent during the relationship.

On June 15, 2008, Barnslater was drinking alcohol at a family gathering. When Barnslater moved quickly toward J.B.'s adult daughter, J.B. attempted to stop him. Barnslater pushed J.B. to the floor, grabbed J.B.'s daughter by the throat, and held J.B.'s daughter so that her feet dangled above the floor. Based on this episode, Barnslater was convicted of fifth-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

degree domestic assault. Barnslater also was ordered to have no contact with J.B.

J.B. obtained an order for protection, and Barnslater moved out of the house they shared. But Barnslater continued to have contact with J.B., repeatedly arranging with her to retrieve personal property from the home. On one occasion, after Barnslater had been drinking, he approached J.B. as she was walking near her home and asked her to reconcile. When J.B. attempted to walk away, Barnslater followed her and asked for a ride to his residence. J.B. acquiesced in order to keep Barnslater from coming near her home. On a different occasion, Barnslater came to a shop that J.B. frequented, approached her, and asked her to allow him to obtain more personal property from her home. J.B. agreed, but she directed Barnslater to stay out of the living quarters of the house. Rather than complying with this request, Barnslater entered the living quarters and again asked J.B. to reconcile.

At approximately 4:00 a.m. on October 18, 2008, J.B. heard the overhead garage door open and shut repeatedly. Because J.B. believed that Barnslater did not have the code to the garage door, she thought that her daughter was responsible. J.B. opened the door between the residence and the attached garage. When she saw Barnslater standing near the garage door, she attempted to close the door to the residence. Barnslater kicked the door open and chased J.B. up the stairs. J.B. was able to escape when Barnslater slipped as he chased her. Barnslater then began hitting J.B.'s friend, C.W., who was staying at J.B.'s house that night. J.B. ran from the residence, hid under the decks of her neighbors' homes, and tried to stop passing cars. She eventually went to a gas station and called the police. When J.B. returned to her residence with the police, she saw that some items in her home had been thrown around, some had been broken, and some were missing. Barnslater was arrested and convicted of first-degree burglary for his actions on October 18.

On March 2, 2009, Barnslater telephoned J.B.'s friend, R.A. Barnslater told her "You can tell your friend [J.B.] to stop acting scared. I'm not going to be bothering her." He explained that, although J.B. now lived in Burnsville, he did not know the location of her residence and had not been there. He assured R.A. that, "I am going to leave her alone and so you can let her know that." R.A. advised J.B. about the telephone call, and J.B. contacted Barnslater's probation officer, Steven Gomez. Following Gomez's advice, J.B. called the police.

Barnslater was charged with engaging in a pattern of harassing conduct, Minn. Stat. § 609.749, subd. 5, for conduct that occurred between March 3, 2004 and March 2, 2009; violation of an order for protection, Minn.Stat. § 518B.01, subd. 14(d)(1), for the March 2, 2009 telephone conversation with R.A.; and violation of a domestic abuse no-contact order, Minn. Stat. § 518B.01, subd. 22(d)(1) (2008), for the same March 2, 2009 telephone conversation with R.A. The state subsequently dismissed the latter charge.

The case proceeded to trial. In addition to permitting J.B. to testify regarding the three specific incidents that constituted the pattern of harassing conduct, the district court permitted J.B. to testify that Barnslater had prior convictions of domestic assault from assaulting her on September 5, 1997, September 22, 1997, and January 3, 1999. This aspect of J.B.'s testimony was restricted to the fact that Barnslater had assaulted J.B. and to the fact that Barnslater had been convicted of domestic assault for his conduct on each of the three dates.

The jury returned guilty verdicts on the offenses of engaging in a pattern of harassing conduct and violation of an order for protection. The district court subsequently denied Barnslater's motion for a downward dispositional departure and imposed a sentence of 33 months' imprisonment for engaging in a pattern of harassing conduct. The district court ordered this sentence to be served concurrently with the executed sentence imposed for the October 2008 first-degree burglary offense. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by admitting evidence of prior acts of domestic abuse as relationship evidence pursuant to Minn.Stat. § 634.20?

II. Did the district court commit reversible error by failing to give the jury a cautionary instruction regarding the relationship evidence?

## ANALYSIS

### I.

#### A.

 Barnslater argues that the district court erred by admitting evidence of his past assaultive conduct as relationship evidence because Minn.Stat. § 634.20 is inapplicable when a defendant is charged with engaging in a pattern of harassing conduct or violating an order for protection. Evidentiary rulings ordinarily rest within the sound discretion of the district court. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). But when, as here, an appellant challenges the admission of evidence as contrary to the plain meaning of a statutory provision governing the admissibility of evidence, we are presented with an issue of statutory construction, which we review de novo. *Lewis–Miller v. Ross,* 710 N.W.2d 565, 568 (Minn.2006).

 In cases involving domestic violence, Minn.Stat. § 634.20 governs the admissibility of a discrete category of other-bad-acts evidence. Section 634.20, which was expressly adopted by the Minnesota Supreme Court as "a rule of evidence for the admission of evidence of similar conduct by the accused against the alleged victim of domestic abuse," *State v. McCoy,* 682 N.W.2d 153, 161 (Minn.2004), provides as follows:

> Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Similar conduct" includes, *but is not limited to,* evidence of domestic abuse, violation of an order for protection under section 518B.01; violation of a harassment restraining order under section 609.748; or violation of section 609.749 or 609.79, subdivision 1. "Domestic abuse" and "family household members" have the meanings given under section 518B.01, subdivision 2.

Minn.Stat. § 634.20 (emphasis added). Evidence presented under section 634.20 is offered to demonstrate the history of the relationship between the accused and the victim of domestic abuse. *McCoy,* 682 N.W.2d at 159. For this reason, it is tailored to address the unique nature of domestic violence, which often is difficult to prosecute because of the abuser's control over the victim. *Id.* at 161. But "[w]hen the state cannot charge a crime constituting domestic abuse, it may not use [section] 634.20 to circumvent rules of admissibility for prior bad acts." *State v.*

*McCurry,* 770 N.W.2d 553, 561 (Minn.App. 2009), *review denied* (Minn. Oct. 28, 2009). As used in section 634.20, "domestic abuse" means "(1) physical harm, bodily injury or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats ... criminal sexual conduct ... or interference with an emergency call." Minn.Stat. §§ 634.20, 518B.01, subd. 2(a).

■ Barnslater argues that evidence of his prior violence against J.B. does not meet the requirements of section 634.20 because the charged offenses in this case—engaging in a pattern of harassing conduct and violation of a restraining order—do not satisfy the definition of "domestic abuse" set forth in section 518B.01, subdivision 2(a). Barnslater's argument is unavailing. The admissibility of relationship evidence under section 634.20 does not depend on the particular offense charged in the case in which the evidence is offered. Rather, section 634.20 requires that the evidence address similar conduct by the accused against "the victim of domestic abuse." The applicable definition of "domestic abuse" focuses on the defendant's conduct rather than on a list of offenses that represent "domestic abuse."

■ Specifically, as defined, "domestic abuse" includes both types of assaultive conduct (physical harm, bodily injury, assault, and the infliction of fear of imminent physical harm, bodily injury or assault) and types of offenses (terroristic threats, criminal sexual conduct, and interference with an emergency call). Minn.Stat. §§ 634.20, 518B.01, subd. 2(a). Thus, the plain language of section 634.20 establishes that the admissibility of relationship evidence is based on whether the accused's *underlying conduct* constitutes domestic abuse under section 518B.01, subdivision 2(a), not on whether the particular offense that was charged is listed in section

518B.01, subdivision 2(a). *See McCurry,* 770 N.W.2d at 559, 561 (concluding that the state could not introduce relationship evidence when "the conduct underlying the charges did not amount to 'domestic abuse' under section 634.20").

Here, Barnslater was charged for conduct that included assaulting J.B. by pushing her to the floor and inflicting imminent fear of physical harm by kicking in the door to J.B.'s home and chasing her through her home. This conduct clearly satisfies the definition of "domestic abuse" under section 518B.01, subdivision 2(a). J.B., therefore, was a victim of domestic abuse for the purposes of section 634.20. Consequently, the district court did not err as a matter of law by declining to exclude evidence of Barnslater's prior similar conduct against J.B. simply because the charged offenses were not listed in the definition of "domestic abuse" referenced in section 634.20.

**B.**

■ We next consider whether the district court abused its discretion by admitting the relationship evidence because evidence of the prior convictions from 1997 and 1999 was unduly prejudicial. Relationship evidence is admissible under section 634.20 if (1) it demonstrates similar conduct by the accused; (2) the conduct is perpetrated against the victim of domestic abuse or against another family or household member; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Minn.Stat. § 634.20; *McCoy,* 682 N.W.2d at 159.

First, the evidence at issue involved three prior assaults by Barnslater against J.B., with whom he shared a household and an intimate relationship. "Similar conduct" includes prior acts of "domestic abuse." Minn.Stat. § 634.20. Because the

evidence at issue here was Barnslater's three 1997 and 1999 prior convictions of domestic assault committed against J.B., the victim of the instant offense, the evidence was not submitted as evidence to prove the elements of the offense of engaging in a pattern of harassing conduct, but as evidence of "similar conduct" under section 634.20.

As to the second requirement that the prior conduct was against the victim of domestic abuse, the prior domestic-assault offenses were committed against J.B., who is also the victim of the offenses charged here. The question, therefore, is whether the conduct underlying any of the charged offenses constitutes domestic abuse such that J.B. would be considered a victim of domestic abuse for the purposes of section 634.20.

J.B. was a victim of domestic abuse based on the conduct underlying the charged offense of engaging in a pattern of harassing conduct, which involved three incidents that occurred within five years of the charge.[1] The first incident in the pattern occurred on June 15, 2008, when Barnslater pushed J.B. to the floor. This conduct plainly involves assault and infliction of fear of bodily harm against a family or household member.[2]

The second incident occurred on October 18, 2008, when Barnslater kicked in the door to J.B.'s home and chased her up the stairs. By kicking the door in and chasing J.B. into the home, Barnslater's actions satisfy the "domestic abuse" definition,

which includes "infliction of fear of imminent physical harm, bodily injury, or assault" on a household member. *See* Minn. Stat. §§ 634.20, 518B.01, subd. 2(a), (b) (defining "family or household member" as including persons who have resided together in the past). Because two of the three incidents meet the definition of "domestic abuse," the second requirement for admissibility under Minn.Stat. § 634.20 is satisfied.

■ The third requirement is that the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice. "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Lindsey,* 755 N.W.2d 752, 756 (Minn.App.2008) (quotation omitted), *review denied* (Minn. Oct. 29, 2008). As the district court properly observed, the context of the relationship between Barnslater and J.B. is particularly probative because the state had to prove, as an element of the offense, that Barnslater had reason to know that his conduct would cause J.B. to be terrorized or to fear bodily harm based on Barnslater's past assaults on her. Although the prior convictions were from 1997 and 1999, they occurred during the ongoing relationship between Barnslater and J.B. and were relevant to understanding the context of that 11–year relationship. We agree with the district court's determination that the relationship evidence has significant probative value.

---

1. We conclude, and the state does not dispute, that Barnslater's charge and subsequent conviction of violation of an order for protection did not involve domestic abuse as defined in Minn.Stat. § 518B.01 because it was based on Barnslater's attempt to contact J.B. through her friend, which did not include the infliction of imminent harm, terroristic threats, or other conduct that meets the definition of "domestic abuse."

2. Section 518B.01, subdivision 2(a), defines "domestic abuse" as certain acts committed against a "family or household member." A "family or household member" includes persons who have resided together in the past. Minn.Stat. § 518B.01, subd. 2(b) (2008). J.B. resided with Barnslater throughout most of her relationship with him.

We also agree with the district court's assessment that the probative value of this evidence outweighs the danger for unfair prejudice. J.B.'s testimony was limited to the fact of the convictions. The prosecution referred to the relationship evidence very briefly. The evidence supporting Barnslater's convictions of the charged offenses also was strong. It included detailed testimony regarding the nature of Barnslater's harassing conduct and the order-for-protection violation from J.B., R.A., Barnslater's probation officer, and two police officers. Our careful review of the record establishes that the district court was well within its sound discretion when it admitted the relationship evidence under section 634.20.[3]

## II.

Barnslater also argues that the district court erred when it admitted the relationship evidence without providing a cautionary instruction regarding the proper use of this evidence. Barnslater neither requested a cautionary instruction to the jury nor objected to the final jury instructions on this ground. Ordinarily, an appellant who fails to object forfeits the right to object to the evidence on appeal. *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). To overcome such forfeiture, the appellant must demonstrate that the district court committed prejudicial plain error. Minn. R.Crim. P. 31.02 (stating that appellate court may consider plain error affecting substantial rights even if such error was not raised before district court); *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (holding that appellate court has discretion to consider an error not objected to if such error is plain and affects substantial rights). Plain error ex-

ists when the district court commits an obvious error that affects the defendant's substantial rights. *State v. Ihle*, 640 N.W.2d 910, 917 (Minn.2002). An error affects a defendant's substantial rights if it was "prejudicial and affected the outcome of the case." *Id.* (stating that an error is prejudicial if there is a "reasonable likelihood" that the error "had a significant effect on the verdict of the jury" (quotation omitted)).

A district court should instruct the jury regarding the proper use of relationship evidence presented under section 634.20 both when the evidence is received and in the final jury instructions. *See State v. Meldrum*, 724 N.W.2d 15, 21–22 (Minn.App.2006) (observing that the danger of using this evidence for an improper purpose is "so significant that the precaution of providing a limiting instruction ... should be applied to relationship evidence"), *review denied* (Minn. Jan. 24, 2007). But the failure to supply limiting instructions to the jury does not automatically constitute plain error affecting the defendant's substantial rights, particularly when other evidence demonstrates that the probative value of the relationship evidence is not outweighed by its potential for unfair prejudice. *Id.* at 22.

Here, the district court did not instruct the jury as to the proper use of section 634.20 evidence when it was received or in the district court's final instructions. Rather, in its final instructions to the jury, the district court stated that the jury "must not consider any previous conviction as evidence of guilt of the offense for which [Barnslater] is on trial" and that the jury was "not to convict [Barnslater] of

---

3. Because we conclude that the district court properly admitted evidence of Barnslater's prior convictions as relationship evidence under Minn.Stat. § 634.20, we need not address Barnslater's arguments that the notice and other requirements of Minn. R. Evid. 404(b) were not met.

any offense of which he is not here charged." To ensure that the relationship evidence was used for its proper purpose, the district court should have specifically instructed the jury about the limited use for this evidence when the evidence was received and in its final instructions. *State v. Word,* 755 N.W.2d 776, 785 (Minn.App. 2008) (concluding that district court plainly erred by providing general instructions similar to those given here but failing to issue cautionary instruction specific to relationship evidence at time it was received); *Meldrum,* 724 N.W.2d at 21–22. In light of our decisions in *Word* and *Meldrum,* the district court's error in failing to instruct the jury regarding the proper use of the relationship evidence was plain.

For three reasons, however, we conclude that this error did not affect Barnslater's substantial rights. First, J.B.'s testimony was limited to a brief reference to Barnslater's convictions of domestic assault against J.B. on three separate dates in 1997 and 1999. The state did not present testimony as to Barnslater's conduct underlying those convictions. The limited nature of J.B.'s testimony minimized the potential for unfair prejudice. Second, the district court's final jury instructions alleviated much of the risk that the jury would improperly convict Barnslater for the prior offenses rather than the charged offense. *See Word,* 755 N.W.2d at 785 (holding that similar instructions in case in which relationship evidence was "dramatic" were sufficient to minimize potential risk of unfair prejudice). Third, as we discussed above,

the evidence supporting Barnslater's convictions of the charged offenses was very strong. Accordingly, any risk of unfair prejudice created by the failure to instruct the jury about the limited use of the relationship evidence was minimal.

Because the probative value of Barnslater's prior domestic-assault convictions far outweighs the potential for unfair prejudice resulting from the district court's failure to instruct the jury sua sponte, the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *See Meldrum,* 724 N.W.2d at 20. Accordingly, reversal of Barnslater's convictions on this ground is unwarranted.

## DECISION

Evidence of the accused's similar conduct against the victim is properly admitted pursuant to Minn.Stat. § 634.20 when the conduct underlying a charged offense constitutes "domestic abuse" as defined in Minn.Stat. § 518B.01, subd. 2(a). The district court did not commit reversible error by failing to instruct the jury sua sponte as to the limited purpose for which evidence admitted under Minn.Stat. § 634.20 may be used.

**Affirmed.**