*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1661**

State of Minnesota,
Respondent,

vs.

Steven Kobena Ampah,
Appellant.

**Filed September 12, 2016
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-14-18601

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Bjorkman, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his conviction of second-degree assault, arguing that the district court deprived him of his right to present a complete defense, the prosecutor

committed prejudicial misconduct during closing arguments, the district court plainly erred by failing to caution the jury on the proper use of relationship evidence, he received ineffective assistance of counsel, and the cumulative effect of these errors deprived him of his right to a fair trial.  We affirm.

**FACTS**

Appellant Steven Kobena Ampah and Q.L began dating in August 2011.  In January 2012, Q.L. moved in with Ampah.  According to Q.L, their relationship began to change almost immediately.  Ampah became controlling, criticized her appearance, threw away her clothing, and pawned her jewelry.  Over the next one-and-a-half years, Q.L. attempted to leave Ampah many times, but Ampah always persuaded her to stay.  During the final six months of their relationship, Ampah became physically aggressive, grabbing Q.L.'s wrists and arms to restrain her from leaving, and throwing her possessions, causing many to break.

On the night of June 26, 2014, Q.L. confronted Ampah after a woman knocked on the apartment door in the middle of the night.  Ampah claimed he and the woman were just friends.  Q.L. returned to bed.  The following morning, she woke up and checked her e-mail.  Ampah saw that one of the messages was from a male; he became upset and accused Q.L. of being unfaithful, and the two began to argue.

The dispute became physical and Q.L. told Ampah she wanted to leave.  Ampah pushed her down and grabbed her wrists and arms.  Q.L. managed to break loose and ran into the bedroom.  She tried to call 911, but Ampah took her phone.  Ampah then shoved her against the dresser and told her he would not let her leave because he had "invested too much time" in her and he "refuse[d] to let [her] live without [him]."

2

While Q.L. was gathering her possessions, Ampah approached her with a knife. While holding the knife a few inches from her neck, he repeatedly told her he would kill her and would not let her live without him. Q.L. screamed for a neighbor, but Ampah told her the neighbor was not home. Q.L. then attempted to calm Ampah down, saying that she was sorry and would stay. Eventually, Q.L. retrieved her phone, shoved Ampah aside, and ran out of the building.

Q.L. ran to a nearby motel and called 911. She told the dispatcher that Ampah had a knife and tried to stab her, and that she thought she saw Ampah's car approaching. The dispatcher told her there was an officer on scene and instructed her to talk to the officer. Richfield Police Officer Tianna Hadjiyiannis spoke with Q.L. about the incident and then took her to the police station.

Ampah was not at the motel or the apartment building when the officers arrived. Officers gained access to the apartment using a master key. Officer Alex Blaine discovered a knife on the desk in the bedroom. He also saw a broken TV on the floor. While the police were searching the apartment, another resident, M.F., noticed Ampah sitting in his car approximately one block away from the building. M.F. described Ampah as leaning back in his seat "as if trying to hide." Officers later located Ampah approximately six blocks away. He was sitting in his car with the seat reclined all the way back.

Respondent State of Minnesota charged Ampah with second-degree assault. During a jury trial, Ampah sought to elicit testimony from neighbor S.H. that prior to the incident, Q.L. told her "If my man crosses me, I will call his probation officer or the police and get him in trouble." The state argued the statement was inadmissible hearsay. The district

3

court ruled that Ampah could ask S.H. if she had any conversations with Q.L. but could not ask her about the content of those conversations.

The jury found Ampah guilty. Ampah moved for a judgment of acquittal or a new trial. The district court denied the motions and sentenced Ampah to 45 months in prison. Ampah appeals.

## DECISION

**I.** **The district court did not abuse its discretion by excluding Q.L.'s out-of-court statement.**

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

Ampah argues that the district court abused its discretion by excluding as hearsay a statement Q.L. allegedly made to her neighbor, S.H. Although the record does not contain the precise statement, both parties summarize it as "If my man crosses me, I will call his probation officer or the police and get him in trouble." Ampah assigns four errors, arguing that the statement is not hearsay, falls within the exception for statements against interest, is admissible for impeachment purposes, and its exclusion violated his constitutional right to present a complete defense. These arguments are unavailing.

First, the proffered statement is hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Ampah's theory of defense was that Q.L. fabricated the assault because she was mad at him. The substance

4

of the statement Ampah sought to introduce—"If my man crosses me, I will call his probation officer or the police and get him in trouble"—directly implicates his defense. The defense's theory was that Q.L. acted in accordance with her out-of-court statement. Because Ampah offered the statement for its content, it is hearsay.

Second, we are not persuaded that the statement goes against Q.L.'s interests. A statement against interest is one that, at the time of its making, is "so far tended to subject the declarant to civil or criminal liability" that a reasonable person would not make the statement. Minn. R. Evid. 804(b)(3). The district court correctly observed that a declarant must be unavailable as a witness to admit a statement under this exception. *Id.* Ampah argues that the availability of a witness is a technicality, and that the statement goes against Q.L.'s interest because it indicates her willingness to file a false release report to get Ampah in trouble. We are not persuaded.

Rule 804(b)(3), by its terms, only applies to statements of unavailable witnesses. Ampah has not convinced us to ignore the rule's clear language. The record does not indicate when, or under what circumstances, the statement was made. And the statement does not, on its face, demonstrate Q.L.'s intent to file a false police report and expose herself to criminal liability. Given Q.L.'s testimony that the relationship deteriorated rapidly over the final six months and that Ampah began physically restraining her and shoving her, the statement could reasonably be interpreted to suggest she would contact Ampah's probation officer if he repeated such behavior.

Third, Ampah was permitted to impeach Q.L.'s testimony that she did not have any personal conversations with S.H. The district court ruled that the defense could inquire generally about such conversations, but not about the substance of the communication. This ruling did not limit Ampah's ability to impeach Q.L.'s testimony that she was "not close to [S.H.]" and had "never sat down and had a real conversation with her." Defense counsel elicited S.H.'s contrary testimony that she "considered [Q.L.] to be a friend" and that they spoke on a regular basis about personal subjects, including Q.L.'s relationship with Ampah. S.H.'s testimony impeached Q.L.'s assertion that she and S.H. were not close and did not speak regularly.[1]

Finally, the exclusion of Q.L.'s statement did not violate Ampah's constitutional right to present a complete defense. A criminal defendant has the right to present a complete defense. *State v. Munt*, 831 N.W.2d 569, 585 (Minn. 2013). But the right is not absolute, and a defendant "must still comply with established rules of evidence designed to assure both fairness and reliability in assessing guilt or innocence." *Id.* (quotation omitted). Because the statement is hearsay and does not fall within an exception to the hearsay rule, its exclusion did not violate Ampah's right to present a complete defense. In

---

[1] Ampah also argues that the statement was admissible as a statement of Q.L.'s then-existing state of mind under Minn. R. Evid. 803(3). To be admissible under the state-of-mind exception to the hearsay rule, a statement must be made contemporaneously with the mental state sought to be proven, not be made under suspicious circumstances, and the declarant's state of mind must be at issue. *State v. DeRosier*, 695 N.W.2d 97, 104-05 (Minn. 2005). Ampah first argued the state-of-mind exception in his motion for a new trial. Because the record does not indicate when the statement was made or supply sufficient detail surrounding what may have motivated the statement, the district court denied Ampah's request for relief based on this claimed evidentiary error. We discern no abuse of discretion.

6

sum, we discern no abuse of discretion by the district court in excluding Q.L.'s out-of-court statement.

## II. The prosecutor did not commit prejudicial misconduct during closing arguments.

We look at a trial as a whole to determine whether prosecutorial misconduct warrants a new trial. *State v. Johnson*, 616 N.W.2d 720, 727-28 (Minn. 2000); *see also State v. Hoppe*, 641 N.W.2d 315, 321-22 (Minn. App. 2002) (holding that a new trial was warranted after considering all instances of prosecutorial misconduct), *review denied* (Minn. May 14, 2002). Ampah alleges that the prosecutor made two statements that constitute prosecutorial misconduct. Because he only objected to one statement, and we apply different standards of review to objected-to and unobjected-to misconduct, we address each in turn.

### Objected-to statement

When an objection is made at trial, we first determine whether the prosecutor engaged in misconduct, and, if so, we apply a "two-tiered harmless-error analysis." *State v. Jackson*, 773 N.W.2d 111, 121 (Minn. 2009). If the misconduct is unusually serious, we decide whether it was harmless beyond a reasonable doubt. *Id.* If the misconduct is less serious, we consider whether it likely played a substantial part in influencing the jury's verdict. *Id.*

During closing arguments, defense counsel focused on the lack of evidence corroborating Q.L.'s testimony. Defense counsel further argued that Q.L. was angry that her relationship with Ampah was over and "was going to give him what was coming for

7

leaving." During rebuttal argument, the prosecutor reminded the jury that statements of counsel are not evidence, and that several statements made by defense counsel reflected his speculation, not the evidence. The prosecutor then stated "Don't speculate on things that are not before you. That's not your job as a juror. Your job as a juror is to focus on the evidence that was presented to you." Ampah moved for a mistrial, arguing the prosecutor's statement impermissibly shifted the burden of proof by leading the jury to believe it could not consider the lack of corroborating evidence. The district court denied the motion.

Ampah argues that he was prejudiced because the prosecutor misstated the law with respect to the state's burden of proof. We disagree. The prosecutor's assertions that the statements of counsel are not evidence and that the jury should focus on the evidence that was presented to it did not misstate the law. At the outset of the trial, the district court instructed the jury that it should "base [its] verdict on the evidence in this case and not on evidence that is not presented in the case" and that the verdict "must be based on the evidence [it] hear[s] during the trial." After closing arguments, the district court instructed the jury that the statements of counsel are not evidence. The court further told the jury that it "must consider all the evidence [it has] heard and seen in this trial" and stressed that the state must convince the jury "by evidence beyond a reasonable doubt that [Ampah] is guilty of the crime charged." Because the prosecutor's statements regarding speculation and the jurors' responsibility to focus on the evidence are consistent with these instructions, and did not misstate the law regarding the state's burden of proof, we discern no misconduct.

8

**Unobjected-to statement**

We review unobjected-to prosecutorial misconduct under a modified plain-error standard, considering whether there is "(1) error, (2) that is plain, and (3) affects substantial rights." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). On this third prong, the state has the burden of proving that any misconduct did not affect the defendant's substantial rights. *State v. Hill*, 801 N.W.2d 646, 654 (Minn. 2011). When deciding whether the state has met this burden, we consider (1) the strength of the evidence against the defendant, (2) the pervasiveness of the misconduct, and (3) whether the defendant had the opportunity, or made efforts, to rebut the prosecutor's improper suggestions. *Id.* at 654-55. "If we conclude that any prong of the plain error analysis is not satisfied, we need not consider the other prongs." *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

Ampah argues that the statement "if you believe [Q.L.] was telling you the truth, that is proof beyond a reasonable doubt" was plain error because it impermissibly suggested the jury must find that a witness is lying to acquit the defendant and distorted the state's burden of proof. We are not persuaded. When reviewing the challenged statement, we must consider the closing arguments as a whole. *Johnson*, 616 N.W.2d at 728. In doing so, we conclude the prosecutor did not misstate the law or lower the state's burden of proof.

The prosecutor explained the three elements the state had to prove and then how the state had proven each element. The prosecutor anticipated that the defense would focus on the lack of evidence corroborating Q.L.'s testimony, stating that there was some corroborating evidence, and noting that the law does not require corroboration. This is not

9

a misstatement of the law. A conviction may be based on the uncorroborated testimony of a single, credible witness. *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004). The prosecutor then explained how Q.L.'s testimony addressed each element of the crime and urged the jury to "critically analyze" Q.L.'s testimony. This did not improperly lower the burden of proof.

Moreover, both the prosecutor and the district court explained the reasonable-doubt standard. A district court's "repeated instruction on the state's burden to prove the defendant's guilt leaves no doubt that the jury could not have been misled that it was the burden of the state to prove each element of the charged crime beyond a reasonable doubt." *State v. Robinson*, 604 N.W.2d 355, 364 (Minn. 2000). On this record, we conclude that the prosecutor's statement does not constitute plain error.

III. **The district court's error in not instructing the jury on the proper use of relationship evidence was harmless.**

The district court admitted relationship evidence under Minn. Stat. § 634.20 (2014) but did not give a cautionary instruction on the limited and proper use of such evidence. Ampah did not request a cautionary instruction, but "even in the absence of a request from counsel, the district court should provide a cautionary instruction when the [relationship] evidence is admitted, and again during its final charge to the jury." *State v. Meldrum*, 724 N.W.2d 15, 21 (Minn. App. 2006), *review denied* (Minn. Jan. 24, 2007). A district court's failure to provide a cautionary instruction does not automatically require reversal. *State v. Barnslater*, 786 N.W.2d 646, 653 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010). This is particularly true when the other evidence makes it clear that the probative value

10

outweighs the potential prejudice. *Id.* We also consider whether the prosecutor urged the jury to use the relationship evidence in an improper way. *State v. Word*, 755 N.W.2d 776, 786 (Minn. App. 2008).

Ampah argues that the absence of a cautionary instruction requires reversal because the prosecutor urged the jury to use the relationship evidence for an improper purpose— portraying him as a controlling boyfriend. We disagree. The purpose of relationship evidence is to "illuminate the history of the relationship" and "put the crime charged in the context of the relationship between the two." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). Here, the relationship evidence provided a general overview of the history and dynamic of the relationship between Ampah and Q.L. This is not an improper purpose.

Ampah next argues that the risk of unfair prejudice was high because the relationship evidence was "dramatic." We are not persuaded. Q.L. plainly presented Ampah as increasingly controlling and aggressive. But her testimony was very general and did not include allegations that Ampah used weapons. Q.L.'s testimony that Ampah had grabbed her arms in the past and her assertion that Ampah held a knife within inches of her body and threatened to kill her on the day in question are markedly different. It is unlikely the jury would convict Ampah based on his past conduct that was substantially different from and not nearly as serious as the charged offense.

Because the risk of unfair prejudice was low and the prosecutor did not urge the jury to use the relationship evidence in an improper way, the district court's failure to provide a cautionary instruction does not entitle Ampah to a new trial.

**IV.      Amaph did not receive ineffective assistance of counsel.**

To prevail on a claim of ineffective assistance of counsel, Ampah must demonstrate "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)).  An attorney provides reasonable assistance when he exercises the customary skills and diligence that a reasonably competent attorney would exercise under the circumstances.  *Dukes v. State*, 621 N.W.2d 246, 252 (Minn. 2001).  A trial counsel's performance is presumed to be reasonable.  *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014).

In a pro se supplemental brief, Ampah argues that his counsel was ineffective because he did not tell Ampah that he could change his mind after he waived his right to testify.  This argument is unavailing.  The record indicates that before waiving his right to testify, there was a recess to allow Ampah and his attorney to discuss the issue.  After the discussion, Ampah waived his right to testify on the record, acknowledging that he had sufficient time to discuss the decision with his attorney, that his attorney had answered all of his questions, and that he personally decided to give up his right to testify.  Nothing in the record supports Ampah's assertion that he would have testified if he had known the district court was going to exclude Q.L.'s out-of-court statement.  Because Ampah did not

indicate he had any questions and counsel's performance is presumed to be reasonable, we

conclude Ampah has failed to establish he received ineffective assistance of counsel.[2]

**Affirmed.**

---

[2] Ampah also argues cumulative error entitles him to a new trial. A new trial may be granted when the cumulative effect of the errors, none of which alone might have been sufficient to warrant reversal, deprived a defendant of an unbiased jury. *State v. Johnson*, 441 N.W.2d 460, 466 (Minn. 1989). Because we conclude the only error was the district court's failure to give a cautionary instruction on the use of relationship evidence, cumulative error does not entitle Ampah to relief.