*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0580**

State of Minnesota,
Respondent,

vs.

Christopher Paul Hilton,
Appellant.

**Filed February 21, 2017
Affirmed
Jesson, Judge**

Olmsted County District Court
File No. 55-CR-15-6492

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant Christopher Paul Hilton challenges his convictions of felony domestic assault and first-degree burglary, arguing that the district court committed reversible error

by admitting in evidence transcripts of his guilty pleas to domestic-conduct-related offenses committed against three other persons under Minnesota Statutes section 634.20 (2014). Because the probative value of the relationship evidence was not outweighed by the danger of unfair prejudice, we affirm.

## FACTS

In August 2015, Hilton had been dating C.S. for about six months, and he sometimes stayed over at the duplex where C.S. lived with other roommates. Late one evening, C.S. returned from drinking with a girlfriend and went to sleep in her basement room. She awoke in the middle of the night to find Hilton in her room. She accused him of cheating on her, told him that he had to leave, and threw a glassful of liquid on him. He then grabbed her, threw her down, and attempted to choke her, holding her down and squeezing her neck.

C.S.'s male roommate, who had arrived home in the early morning hours, was standing outside when he heard cries for help coming from C.S.'s room. He went downstairs, opened her bedroom door, and saw Hilton, whose back was turned, step back from whatever he had been doing. C.S. ran to the roommate and exclaimed that he had saved her life. All three of them went upstairs. Hilton argued with C.S., slapped her across the face, and then left after C.S. asked him to do so. The incident was not then reported to police.

One evening in September, after C.S. returned from out of town, she and Hilton had a few drinks to discuss their relationship. Hilton dropped her off at the duplex, and she went to sleep. She woke again in the middle of the night to find him yelling at her and asking why a lock had been placed on her phone. She told him to leave, and he did. She

2

then called him and told him to pick up his belongings and get out of her life. He returned, loaded some items, and then left suddenly. In a series of phone calls, she said he had more to pick up, he said that he was on his way back, and she told him to stay where he was because she was going to sleep. She locked the outside door and woke up to a rustling sound, heard her window falling off the hinges, and saw him hanging from the window. She ran upstairs calling for help.

C.S.'s roommate called 911 after he heard the commotion. Responding police observed the open window and Hilton swinging a liquor bottle. C.S. appeared very upset and fearful. Police took statements from both Hilton and C.S. and arrested Hilton. The next morning, a police officer interviewed C.S again, and she provided details about the August incident.

The state charged Hilton with several offenses, including felony domestic assault based on the August incident, and first-degree burglary based on the September incident. Before Hilton's jury trial, the state moved to introduce redacted transcripts of his guilty pleas to prior domestic-conduct-related offenses committed against three other women: (1) a 2012 felony domestic assault, in which Hilton admitted striking his then girlfriend without justification; (2) a 2012 fifth-degree assault, in which he admitted grabbing a former girlfriend on the arm and scratching her; and (3) a 2009 misdemeanor domestic assault, in which he admitted throwing a cigarette lighter, which ricocheted and struck the mother of his child. Over a defense objection, the district court admitted the transcripts as relationship evidence.

When the evidence was introduced, as well as in final instructions, the district court instructed the jury with modified versions of CRIMJIG 2.07 and CRIMJIG 3.30, the pattern jury instructions regarding relationship evidence. *See* 10 *Minnesota Practice* CRIMJIG 2.07, 3.30 (2015). Consistent with the pattern instructions, the district court instructed the jury that (1) the evidence was being offered for the limited purpose of assisting the jury to determine whether the defendant committed the acts charged in the complaint; (2) the defendant was not being tried for, and may not be convicted of, any behavior other than the charged offense, and (3) the jury was not to convict him on the basis of the conduct introduced as relationship evidence. *See id.* The district court did not include the portion of the pattern instructions stating that the evidence was being offered for the limited purpose of showing the nature and extent of the relationship between the defendant and the victim or other family or household members. *See id.* At closing argument, however, the prosecutor argued to the jury that it was not to convict the defendant on the basis of his past offenses, but it "[could] use [the relationship] evidence to provide context for the present allegations, . . . to shed light on how it is that [the defendant] interacts with [C.S.]."

The jury found Hilton guilty of felony domestic assault based on the August incident and first-degree burglary based on the September incident. This appeal follows.

## DECISION

Hilton argues that the district court abused its discretion by admitting transcripts of his guilty pleas to domestic-conduct-related offenses involving women with whom he had prior relationships. By statute, the district court may admit "[e]vidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or

4

household members," provided that certain conditions are met. Minn. Stat. § 634.20 (2014). We review a district court's decision to admit relationship evidence for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

Relationship evidence is a discrete category of other-bad-acts evidence. *State v. Meyer*, 749 N.W.2d 844, 848 (Minn. App. 2008).[1] Such evidence is relevant because it assists in illuminating the history of the relationship between the defendant and the victim, and it may also help to prove motive or help the jury to assess witness credibility. *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). Thus, relationship evidence is admissible if its probative value is not substantially outweighed by the danger of unfair prejudice against the defendant, confusing the issue, misleading the jury, undue delay, or the unnecessary presentation of cumulative evidence. Minn. Stat. § 634.20.

Relationship evidence admitted under section 634.20 shows how the defendant interacts with family or household members, including former spouses or girlfriends. *State v. Valentine*, 787 N.W.2d 630, 637 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). This, in turn, suggests how the defendant may interact with the victim. *Id*. Here, Hilton's guilty pleas relate to his conduct in his significant prior relationships with two

---

[1] Relationship evidence is treated differently from evidence of other crimes or bad acts, which is addressed under Minnesota Rule of Evidence 404(b). Other-crimes evidence is not admissible to prove that a defendant acted in conformity with his character, but may be admissible for other purposes, such as to prove motive, intent, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490-91, 139 N.W.2d 167, 169 (1965). Section 634.20 "allows much more latitude" than the exceptions to rule 404(b). *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008).

former girlfriends and the mother of his child. Therefore, they help illustrate how he acted in previous relationships and assist in showing how he interacted with C.S. in their relationship.

Hilton argues, however, that the district court abused its discretion by admitting his guilty pleas to prior domestic-conduct-related offenses because their probative value was substantially outweighed by their prejudicial effect. He maintains that evidence of his conduct during prior relationships is not particularly probative of his conduct during his relationship with C.S. He argues that evidence of his prior guilty pleas does not implicate the primary reasons supporting the admission of relationship evidence because there were witnesses to the incidents and they were reported to police. *See State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). He also maintains that the state did not have a need for the evidence because C.S. did not recant her statements to police, her roommate was present during the incidents and corroborated her testimony, and the state was able to portray Hilton's ongoing relationship with C.S. because the defense did not move to sever the charges for trial.

But the state's need for relationship evidence "is naturally considered as part of the assessment of [its] probative value versus [its] prejudicial effect." *Meyer*, 749 N.W.2d at 849 (quotation omitted). Here, Hilton's guilty pleas are highly probative because they establish that in each of the prior domestic incidents, he admitted that he struck another person or that he threw an object, which then struck the other person. And although he argues that the prior offenses were remote in time, two of them occurred within three years of the offenses in this case. Further, C.S.'s credibility was at issue because she did not

6

report the first incident until a month after it occurred, when Hilton broke into her home after she requested that he remove his belongings after an argument.

Hilton also contends that he was unfairly prejudiced by the admission of the relationship evidence because it suggested that he treats all women the same, creating a risk that the jurors would use his prior conduct as propensity evidence or to punish him for his past acts. In the context of relationship evidence, unfair prejudice does not refer to evidence that is damaging, or even severely damaging; instead it refers to "evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted). Here, however, the risk of unfair prejudice was lessened because the redacted guilty-plea transcripts referred to offenses that were less serious, not more serious, than the offenses charged in this case.

We also note that the district court provided cautionary instructions to the jury on the use of the relationship evidence. A district court's cautionary instruction can lessen the danger of unfair prejudice from the admission of relationship evidence. *State v. Barnslater*, 786 N.W.2d 646, 653-54 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010). The district court twice instructed the jury that the relationship evidence was offered for the limited purpose of assisting in determining whether Hilton committed the charged offense and that it was not to convict him based on that evidence or any behavior except the charged offense. *See* 10 *Minnesota Practice* CRIMJIG 2.07, 3.30. Hilton argues that these instructions were insufficient because the district court did not specifically inform the jury that the evidence was offered for the limited purpose of demonstrating the nature and extent of Hilton's relationship with C.S. *See id*. But the district court's failure to provide a

7

cautionary instruction does not automatically require reversal, particularly when, as here, other evidence makes it clear that the probative value of the evidence outweighs its potential for prejudice. *Barnslater*, 786 N.W.2d at 653.

In analyzing this issue, we also consider whether the prosecutor urged the jury to use the relationship evidence in an improper way. *State v. Word*, 755 N.W.2d 776, 786 (Minn. App. 2008). Here, at closing argument, the prosecutor argued to the jury that it could use the relationship evidence to shed light on how Hilton interacted with C.S. While the prosecutor's argument is not the law, his statement complemented the district court's instructions, and we cannot conclude that the jury was misinformed as to the purpose of the relationship evidence, so that it would have been likely to misuse the evidence when determining Hilton's guilt of the charged crime.

In summary, we conclude that the probative value of the relationship evidence was not outweighed by its prejudicial effect, and the district court properly exercised its discretion by admitting the evidence.

**Affirmed.**