Judith PINKNEY, et al., Relators,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 691, Respondent.**

No. C4–84–1239.

Court of Appeals of Minnesota.

April 23, 1985.

William F. Garber, Minneapolis, for relators.

John M. Colosimo, Virginia, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LANSING and FORSBERG, JJ.

## OPINION

POPOVICH, Chief Judge.

Relators are three teachers who were placed on unrequested leave of absence pursuant to Minn.Stat. § 125.12, subd. 6b (Supp.1983). Relators claim the school board's enrollment survey did not establish the statutory grounds for placing them on unrequested leave of absence. Relators also claim they were denied due process of law because the hearing examiner had a conflict of interest. We affirm, reverse in part and remand.

## FACTS

On April 9, 1984, the school board adopted a resolution proposing to place 14.5 teachers on unrequested leave of absence. The affected teachers were notified, and each relator, except Paulson, submitted a timely request for a hearing.

The school board selected Scott Neff, a local attorney, to serve as hearing examiner at a May 10, 1984 hearing. Relators objected to Neff's appointment because of two apparent conflicts of interest. First, Neff was the attorney for the Babbitt School District and had a termination matter pending in which District 691's attorney, John Colosimo, was the hearing examiner. Second, Neff's sister was one of the teachers placed on unrequested leave of absence by District 691. Neff overruled relators' objection and presided at the hearing.

At the hearing, the school board learned for the first time that relator Gene Paulson was also seeking a hearing. Relators' attorney presented an original copy of Paulson's request for a hearing but did not present any evidence to show the request was presented to the school board. Paulson did not appear at the hearing.

The school board then presented evidence to show its decision to place relators on unrequested leave of absence was based on financial limitations, declining enrollment and elimination of positions. The school board's position relied primarily on an enrollment survey conducted by three persons who did not testify at the hearing. Although the survey was being conducted to determine the enrollment for the fall of 1984, the survey question asked "Do you anticipate moving between now and next Christmas." "Yes," "no," and "maybe" answers were recorded.

From this survey, the school board concluded there would be an enrollment decline of 222 students for the 1984–85 school year. A decline of 222 students would reduce the district's funding by $2000 per student, or $444,000. The school board's

claims of discontinuance of position and financial limitation were premised on this decline in student enrollment.

At the hearing, relators contested the accuracy of the survey. The hearing examiner specifically found:

> The hearing officer finds the survey to be flawed in several respects. First, it is unclear whether the data pertains to persons who will move by September of 1984 or Christmas of 1984. Secondly, the survey uses an arbitrary assumption of a 50% loss of enrollment of those who indicated they might move or whose phones were disconnected. Perhaps, more important is the fact that a decline in enrollment of 222 students between 1983 and 1984 does not appear to be likely when the enrollment decline between 1982 and 1983 was 102, and the decline during the 1983–84 school year shows only a net loss of 23 students.

The survey was not adjusted to account for the possibility of students moving into the district. The survey, which was conducted in February 1984, was not reevaluated after a major employer in the area announced it would be recalling workers.

The hearing examiner found relator Paulson waived his right to a hearing by not submitting a timely request to the school board. The hearing examiner also found that relators "were properly placed on unrequested leave of absence for reasons of financial limitation, declining enrollment, and discontinuance of position." The school board adopted the hearing examiner's findings and placed relators on unrequested leave of absence, and relators appealed.

## ISSUES

1. Did relator Paulson make a timely request for a hearing?

2. Was the school board's decision to place relators on unrequested leave of absence supported by substantial evidence?

3. Were relators denied due process of law because the hearing examiner had conflicts of interest?

## ANALYSIS

■ 1. The school board adopted the hearing examiner's finding that "Gene Paulson is deemed to have acquiesced in his placement on unrequested leave of absence as no request for hearing was submitted as required by statute." This finding is supported by the record. Minn.Stat. § 125.12, subd. 4 (1982) provides:

> Within 14 days after receipt of this [leave of absence] notification the teacher may make a written request for a hearing before the board * * *. If no hearing is requested within such period, it shall be deemed acquiescence by the teacher to the board's action.

*Id.; see* Minn.Stat. § 125.12, subd. 6b(j) (Supp.1983). Although an original copy of Gene Paulson's notice to the board was introduced at the hearing, no evidence was presented to show the notice was delivered to the board. Relator Paulson did not sustain his burden of showing he made a timely request for a hearing.

2. The school board adopted the hearing examiner's conclusion that "[t]he School District established with substantial and competent evidence that the teachers * * * were properly placed on unrequested leave of absence for reasons of financial limitation, declining enrollment, and discontinuance of position." These are three of the statutory grounds contained in Minn.Stat. § 125.12, subd. 6b (Supp.1983).

The school board's claims of discontinuance of position and financial limitation are both based on an enrollment reduction of 222 students. The board claims the projected enrollment reduction of 222 students would have reduced funding by $444,000 and necessitated the discontinuance of positions. Thus, each of the statutory grounds relied upon by the school board is based on the projected enrollment decline of 222 students. Consequently, the central issue in this matter is whether substantial evidence supported the school board's projected enrollment decline of 222 students. We believe there was not.

Review of a school board's decision to place teachers on unrequested leave of absence is limited, and this court seldom will find a board's decision is not supported by substantial evidence. *See generally Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 342 (Minn.1981); *Lifrig v. Independent School District 442*, 292 N.W.2d 726, 729 (Minn.1980). In this matter, however, we need only look to the hearing examiner's findings of fact to conclude the school board did not establish a statutory basis for placing these teachers on unrequested leave of absence.

The school board's projected enrollment decline was based on the informal telephone survey. The hearing examiner concluded this survey was "flawed in several respects." Nevertheless, the hearing examiner relied upon this survey in concluding the school board had established the statutory grounds for placing the teachers on unrequested leave of absence. We agree with the hearing examiner's finding that the survey was flawed in several respects. Although the school board's undertaking of a survey is commendable, we do not agree that a school board may establish the statutory grounds for unrequested leave of absence using incompetent evidence.

The informal telephone survey was the sole basis for the school board's projection of an enrollment decline of 222 students. The survey was incompetent because it (1) did not request information for the relevant enrollment period, (2) arbitrarily assumed 50 percent of the persons who responded they might move or who did not have a telephone would move, (3) was inconsistent with prior enrollment patterns, (4) was not readjusted after a major employer announced it would recall employees, and (5) did not include an estimate for students who would be moving into the school district. The school board's decision to place relators on unrequested leave of absence was not supported by substantial evidence.

3. Although resolution of the foregoing issue makes consideration of relators' due process claim unnecessary, we do not approve the practice employed in this matter. Our cases and those of the Minnesota Supreme Court make clear that a *neutral* hearing examiner should be appointed in these matters. *See Schmidt v. Independent School District No. 1*, 349 N.W.2d 563, 567–68 (Minn.Ct.App.1984); *cf. Crosby-Ironton Federation of Teachers v. Independent School District No. 182*, 285 N.W.2d 667, 670 (Minn.1979) (arbitration matter—"due process may be lacking if some applicable code of responsibility is not followed").

Here, the appearance of unfairness was manifest. Hearing examiner Neff had a matter pending before the school district's attorney, who was acting as a hearing examiner for another school district. Moreover, Neff's sister was one of the teachers placed on unrequested leave of absence in this matter. We believe hearing examiners in teacher termination proceedings should conduct themselves in accordance with the Minnesota Code of Judicial Conduct Canon 3.C. and the principles set forth in *Safeco Insurance Company v. Stariha*, 346 N.W.2d 663, 667 (Minn. Ct.App.1984).

## DECISION

Relator Paulson acquiesced to his placement on unrequested leave of absence by failing to make a timely request for a hearing. The school board's decision to place relators on unrequested leave of absence was not supported by substantial evidence. Relators Nancy Ralston and Judith Pinkney shall be reinstated in accordance with Minn.Stat. § 125.12, subd. 11 (1984).

Affirmed, reversed in part and remanded.