**ROSEVILLE EDUCATION ASSOCIATION, et al., Respondents,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 623, Petitioner, Appellant.**

No. C2–85–1377.

Supreme Court of Minnesota.

Aug. 15, 1986.

Joseph E. Flynn, Patrick J. Flynn, Ann F. Krisnik, St. Paul, for appellant.

Daniel E. Warner, Minneapolis, for respondents.

SIMONETT, Justice.

The court of appeals held that 13 teachers were improperly placed on unrequested leave for failure to request a hearing on their proposed leave placements. As to eight of the teachers, we dismiss their writ of certiorari as untimely obtained; as to the remaining five, we affirm in part and reverse in part.

On March 28, 1985, respondent Independent School District No. 623 (Roseville),[1] by its school board, adopted resolutions to place 26 teachers on unrequested leaves of absence. Each teacher was served with a notice of the board's proposed action to place him or her on leave pursuant to Minn. Stat. § 125.12, subd. 6b (1984), effective the end of the 1984–85 school year. Each notice stated that the reasons for the proposed action were discontinuance of position, lack of pupils, and financial limitations, and that the teacher was entitled to a hearing before the school board if requested within 14 days. The notice concluded with the statement, tracking the statute: "If no hearing is requested within such period, it shall be deemed acquiescence by you to the School Board's proposed action." See Minn.Stat. § 125.12, subd. 4 (1984). On April 25, the school board took similar action to place an additional 10 teachers on leave, and, on April 30, the school board added one more teacher, bringing the total proposed layoffs to 37.

Of the 26 teachers given March notices, 13 requested a hearing and 13 did not. Of the 11 given April notices, 10 requested a hearing.

A hearing was scheduled for May 20, 1985, to consider the proposed leaves for the 13 teachers given March notices who had requested hearings. When May 20th arrived and everyone had convened for the hearing, the school board announced it had decided not to lay off 12 of the 13 teachers who had requested hearings.[2] It announced further that it had also decided not to lay off 9 teachers with April notices who had requested hearings. A "Field Representative" (presumably a representative of the Roseville Education Association) then presented a letter from Glenda Wielinski, one of the teachers with an April notice (but who was not one of the nine whose proposed leaves were rescinded), in which Ms. Wielinski withdrew her request for a hearing. The board then passed resolutions rescinding the proposed leaves, and the scheduled hearings were cancelled.

A few days later the board adopted resolutions placing on unrequested leave 12 teachers who had not requested a hearing,

---

1. In this opinion, we will continue to refer to the parties as they were designated in the court of appeals, i.e., the school district as the respondent and the teachers who initially sought review by certiorari as the relators.

2. As to the 13th teacher, Gertrude Mayer, the board proceeded with her requested hearing, apparently for the purpose of placing her on leave contingent on the outcome of a pending district court lawsuit in which another teacher was contesting Ms. Mayer's seniority. If the other teacher were successful, the school district did not want to be in the position of having two teachers for a department (German) where enrollment justified only one.

plus Glenda Wielinski who had withdrawn her request for a hearing. The resolutions recited the teachers were being put on leave for the reasons set out in the prior notices given and stated that the teachers' failure to have requested a hearing constituted acquiescence in the board's action. These 13 teachers are the relators here.[3] Eight of them were personally served on May 24 with notice of the board's resolution placing them on leave, and the others were served a day or so later. On July 24, 1985, a writ of certiorari issued from the court of appeals on the petition of all 13 teachers. All 13 alleged their placement on leave was arbitrary and a denial of due process. Five also alleged they were senior to persons whose leaves had been proposed but then rescinded.

The court of appeals reversed the school board's action, holding that to place the 13 teachers on leave simply because they had not requested a hearing was arbitrary and for a statutorily insufficient reason. *Roseville Education Association v. Independent School District No. 623*, 380 N.W.2d 512 (Minn.Ct.App.1986). We granted the school district's petition for further review.

## I.

■ For eight relators, Marjorie Anderson, William Cutts, James Faragher, Bonita Hermann, Mary Manns, Mary Ann Schmit, James Schwieger, and Wendy Yaworski, the writ of certiorari did not issue until the 61st day after they had received notice of their placement on leave. Issuance of the writ within 60 days is a jurisdictional prerequisite to judicial review, and the claims of these eight relators must be dismissed. Minn.Stat. § 606.01 (1984); *Plunkett v.*

*First National Bank of Austin*, 262 Minn. 231, 248, 115 N.W.2d 235, 246 (1962).[4]

The claims of Anne Olson, Margaret Ramaker, Susan Scott, Karen Melena, and Glenda Wielinski remain. They claim their failure to have requested a hearing (or in Wielinski's case to have withdrawn a request for a hearing) was an improper ground for placement on unrequested leave. Olson and Ramaker also claim their seniority or bumping rights were wrongfully ignored.

■ As a threshold issue, the school district contends that certiorari does not lie because relators had an adequate remedy at law, namely, the right to a hearing before the school board on the proposed board action to place them on leave, which they waived. The contention is without merit. The remedy being sought by relators is judicial review, not school board review. The issue to be reviewed is the legal effect of not requesting a board hearing, an issue on which the school board has already ruled and which is now properly here for court review. The unrequested board hearing is the problem, not the remedy.

## II.

We now reach the main issue: What is the effect of a teacher's failure to request a hearing on a school board's proposed action to place the teacher on an unrequested leave of absence? If a hearing is not requested within 14 days, the statute says, "it shall be deemed acquiescence by the teacher to the board's action." Minn.Stat. § 125.12, subd. 4 (1984). So the issue before us might also be framed: If a teacher fails to request a hearing, to what action

---

3. We have a very sparse and cryptic record before us. We have no record concerning the teachers who did request hearings and whose proposed leaves were rescinded. Essentially, we have only the bare record on relators. So far as we can piece together what happened, 12 teachers who did not request hearings were laid off, plus Gertrude Mayer (*see* footnote 1), plus Glenda Wielinski, for a total of 14 layoffs. Ms. Mayer, however, did not appeal the school board's decision, leaving 13 relators. Apparent-

ly two teachers who had not requested hearings (actually they were deans) also had their proposed leaves rescinded.

4. Even if the claims of these eight relators had been timely, the claims of three of them would be moot (*see* footnote 7, *infra*) and the claims of the other five would have been, under our decision here, unsuccessful.

by the school board has the teacher acquiesced?

Originally, section 125.12, subdivisions 4 and 6, dealt with termination of a teacher's continuing contract for inefficiency, neglect of duty and the like, and provided for a hearing on the grounds of termination if requested by the teacher. In 1974, the legislature inserted unrequested leaves of absence into this statutory scheme by adding subdivisions 6a and 6b and making the subdivision 4 hearing applicable thereto. Under subdivision 6b, "as many teachers as may be necessary" can be placed on leave by the school district for discontinuance of position, lack of pupils, or financial limitations, and the teachers are to be placed on leave "in fields in which they are licensed in the inverse order in which they were employed by the school district." Implicit in this procedure is the possibility that a teacher whose position is eliminated may nevertheless remain employed by bumping another teacher whose position was not eliminated. Consequently, there is a two-step procedure: First, a determination to eliminate a particular position; then, second, a determination whether the teacher whose position has been eliminated is to be placed on leave or is entitled to bump a less senior teacher.

The subdivision 4 hearing covers both steps. See Jerviss v. Independent School District No. 294, 273 N.W.2d 638, 646 (Minn.1978). At the first step, the teacher may challenge the necessity of eliminating the proposed number of positions or argue that the eliminations should be made in other departments or curriculum areas. Next, at the second step, a teacher whose position is to be eliminated may assert seniority and bumping rights. At the time a hearing must be requested, it should be remembered, the hearing is to be on the board's proposed action which is subject to revision. If, between the time a hearing is requested and the time it is held, circumstances change, the board may decide it is

unnecessary to implement all of its proposed leave placements. For example, if enrollment or financial figures improve or if other teachers retire or resign, the school board might finally determine a lesser number or no teachers need go on unrequested leave.

■ We hold that by not requesting a hearing, a teacher acquiesces in the school board's decision on elimination of those positions which are proposed for elimination. In effect, the teacher concedes the school district's need to eliminate his or her position either alone or relative to the other positions in the district which may or may not have been proposed for elimination.[5] The teacher who does not request a hearing is conceding that the school board has sufficient grounds to exercise its managerial discretion and to eliminate, within the bounds of its proposal, those positions it deems necessary. See Laird v. Independent School District No. 317, 346 N.W.2d 153 (Minn.1984).

■ By not requesting a hearing, a teacher also acquiesces in the second step of the board's determination, but with an important qualification. The teacher concedes if his or her position is eliminated, he or she lacks seniority to bump another teacher and may, therefore, be placed on unrequested leave as proposed. But this acquiescence assumes there has been no change in circumstances after the time for requesting a hearing has expired which changes that teacher's seniority and bumping rights.

III.

At the May 20 hearing, the school board determined it was necessary to eliminate only 13 of the 26 positions originally proposed in March and only 1 of the 11 proposed in April. Although the record does not disclose the reasons for reducing the number of layoffs from 37 to 14, presumably it was because circumstances had changed so that, as of May 20, there was a necessity to discontinue only 14 positions.

5. Thus the fact the school district proposed 11 more teachers for unrequested leave in April, after the time the teachers who received March notices could have requested hearings, does not prejudice those teachers who chose not to request a hearing on their March notices.

Significantly, relators, which include the Roseville Education Association, the exclusive representative for all the teachers, do not disagree.

It appears that in deciding which 14 of the originally proposed 37 positions to eliminate, the school decided to include the 13 positions for which the incumbents had not requested a hearing. Relators say this is unfair and arbitrary. Relators claim they were laid off simply because they had not requested hearings; the school district, on the other hand, says relators were laid off because of discontinuance of position, lack of pupils, and financial limitations. The fact of the matter is that both sides are right. To resolve the issue, we can only return to the basic question: What effect is to be given the statutory mandate that failure to request a hearing "shall be deemed acquiescence by the teacher to the board's action"?

■ Clearly, relators acquiesced in the school board's proposed determination that it was necessary to eliminate 14 positions and which 14 positions should be eliminated. By not requesting hearings, relators may have lost the opportunity to urge the school board to keep their 13 positions and instead eliminate 13 others, but they cannot claim, nor do they here, that if they had requested hearings, the school board could not properly have eliminated their positions.[6]

■ But in any event, argue relators, the school board should have made findings of fact to substantiate its determination that it was necessary to place them on leave. Thus, amicus Minnesota Education Association argues the board had a "duty" to make findings and that this duty does not disappear merely because no hearing was requested. Ordinarily, findings are required in a contested matter "in order to assist judicial review." *Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 342 (Minn.1981). That is not quite the

situation we have here. In initiating an unrequested leave procedure, a school board, at a board meeting, makes an initial determination that it is necessary to place certain teachers on unrequested leave. The purpose of a subsequent hearing, if requested, is to test the basis for that proposed determination. If no hearing is requested, the person affected by the proposed action is deemed to have acquiesced therein; the board then proceeds to take final action using its proposed initial determination as the basis for the final action and also as the basis for any judicial review. Indeed, as was done here, the board in its final resolutions placing the teachers on leave, repeats it is doing so for the reasons set out in the proposed action, namely, discontinuance of position, lack of pupils, or financial limitations. Under the circumstances of this case, the school board's failure to substantiate further the necessity for the proposed layoffs, when those affected thereby have conceded the reasons therefor, cannot be said to be prejudicial error.

Relators point out circumstances can change between the time the unrequested leaves are proposed and final action thereon is taken. Expected pupil or financial reductions may fail to materialize or another teacher in the same department may resign, obviating the need for elimination of a proposed position. In such a situation, a school board, at the time it takes final action, perhaps might be required to justify the proposed layoff even in the absence of a request for a hearing, but that is not this case. Relators do not claim any circumstances arising subsequent to the time they could have asked for hearings that removed the necessity, as originally determined, to eliminate their 13 positions.[7]

IV.

■ Even if the school board did not act improperly in eliminating the 13 positions

---

6. Thus, Glenda Wielinski, apparently deciding a hearing would have been of no avail, withdrew her request for a hearing, even though aware of the proposed rescissions.

7. *But see* footnote 8, *infra.* It should be remembered if a teacher is properly placed on unrequested leave and then, for example, later in the summer, circumstances change so that the school district reinstates the eliminated position, the teacher on unrequested leave may in-

held by relators, two of the relators claim the board acted improperly in implementing the second step of its unrequested leave proposal by ignoring their seniority and bumping rights.[8] We agree.

 Anne Olson and Margaret Ramaker received March notices to be placed on unrequested leave and did not ask for a hearing. Each claims seniority to bump a teacher whose proposed leave was rescinded. Ramaker claims a right to bump one of the teachers who had received a March notice. It is not clear if Olson claims a right to bump a teacher who received a March or April notice. By not requesting hearings, both Olson and Ramaker conceded they were among the 26 least senior teachers but not necessarily the 13 least senior. They never waived their right to bump a less senior teacher whose proposed leave might be rescinded.[9] Not until May 20 did the school board act on any of its proposed leaves and, at that time, rescission of some but not all leaves could, conceivably, alter the seniority ranking among the 37 proposed for leave, and, indeed, this is what Olson and Ramaker allege. The school board says the bumping claims of Olson and Ramaker are without merit, but apparently it has made this judgment unilaterally and after the fact, without notice to Olson and Ramaker, and without any findings for us to review. Not even the resolutions placing Olson and Ramaker on leave allude to any disposition of their seniority claims. We agree with the court of appeals the school board's action on Olson and Ramaker must be reversed and remanded for further proceedings in the school district.

Relators' equal protection claim is without merit and does not require discussion. We might, however, comment on another matter. The subdivision 4 hearing was designed for contract termination proceedings and the statutory scheme fits the unrequested leave procedure awkwardly. For example, it would seem helpful for the notice of placement on proposed unrequested leave to set out also the school board's understanding of the teacher's seniority status. The exclusive representative's role, particularly in the first step of the procedure, might be better defined. (For example, each teacher is given notice of only his or her proposed placement on leave, not of who else is being proposed for leave. While the exclusive representative probably becomes aware of all those proposed for leave, might not the school district give the exclusive representative notice of all the proposed leaves?) The legislature or the contract negotiators may want to look at this.

Affirmed as to Olson and Ramaker (whose claims are remanded); as to the other relators, either reversed or dismissed.

---

voke the statutory right to be reinstated to the revived position. *See* Minn.Stat. § 125.12, subd. 6b(e) (1984).

**8.** Actually, five relators claim violation of seniority rights. Three of them—William Cutts, Mary Ann Schmit, and James Faragher—failed to perfect a timely appeal, but, in any event, it appears their claims would be moot because they were reinstated to teaching positions in the district without loss of pay. The other two teachers claiming bumping rights, Olson and Ramaker, did perfect timely appeals and the issue of their seniority rights is before us.

**9.** The school district relies on *Pinkney v. Independent School District No. 691,* 366 N.W.2d 362 (Minn.Ct.App.1985), as authority for the proposition that failure to request a hearing bars a teacher from contesting board action. In *Pinkney,* the court of appeals held a teacher who had not requested a hearing on his proposed leave placement had acquiesced in his placement on leave even though two of his colleagues had requested hearings and successfully set aside their leave placements because the school district's forecast of declining enrollment was based on insufficient evidence.

*Pinkney* is an example of the general rule that failure to request a hearing constitutes acquiescence in the board's action and precludes judicial relief. Here, however, Olson and Ramaker allege a prejudicial change of circumstances arising after the 14-day period in which they could have requested a hearing—which is an exception to the general rule.