Scott DORAN, Relator,

v.

**INDEPENDENT SCHOOL DISTRICT
NO. 720, SHAKOPEE, Minnesota,
Respondent.**

No. A12–1289.

Court of Appeals of Minnesota.

April 22, 2013.

Margaret A. Luger–Nikolai, Education Minnesota, St. Paul, MN, for relator.

Thomas S. Deans, Carla J. White, Knutson, Flynn and Deans, P.A., Mendota Heights, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; ROSS, Judge; and CHUTICH, Judge.

## OPINION

ROSS, Judge.

The Shakopee Independent School District announced that it would create its own area learning center for its students and therefore stop purchasing its area-learning-center services from the Carver–Scott Educational Cooperative. The cooperative soon informed social studies teacher Scott Doran that it was eliminating his position and placing him on leave for lack of funding and lack of students. The school district advertised for a social studies teacher and administrator to work in its forthcoming area learning center. When Doran asserted a statutory right to the positions, the district hired others instead. Doran appeals from that hiring decision by writ of certiorari. We reverse the decision because we reject the school district's contention that the statute is triggered only when the displaced teacher proves a causal connection between the district's withdrawal and the cooperative's placement of the teacher on leave, and because we reject its contention that the teacher-rights provision of the statute is triggered only by a district's complete withdrawal from cooperative services.

## FACTS

In early 2012, Scott Doran had been a teacher employed for about fifteen years by the Carver–Scott Educational Cooperative. The cooperative included the Shako-

pee Independent School District and eight other school districts. The member districts purchased educational services from the cooperative, including "area·learning center" services. And the cooperative met its obligation to provide services to the school district in part by employing Doran, who taught social studies at the area learning center.

In January 2012, the school district decided to establish its own area learning center independent of the cooperative. It notified the cooperative that by August 15, 2012, the district would no longer need the cooperative's area-learning-center services. Three months after learning of the district's decision, the cooperative wrote Doran informing him that it was placing him on an unrequested leave of absence. The letter gave several reasons for the leave. It said that the leave resulted from the discontinuance of his position, the lack of pupils, and financial limitations. It added also that the leave "is the result of the implementation of an interdistrict cooperation agreement or the withdrawal from a program by a member district." Two days later, the cooperative sent Doran a corrective letter, restating the first three reasons for the leave ("discontinuance of position, lack of pupils and financial limitations") but insisting that "[t]he word 'NOT' was omitted" by mistake from the sentence that referred to an interdistrict cooperation agreement or member withdrawal. The corrective letter specified that the earlier letter should have stated, "This proposed action for placement on unrequested leave of absence is (*NOT*) the result of the implementation of an interdistrict cooperation agreement or the withdrawal from a program by a member district from the Carver–Scott Educational Cooperative." Whether the second letter corrects a mistake or reflects a change of reasons is a point of contention between the parties.

About a month after the cooperative placed Doran on leave, the school district posted job openings for an administrative position and for a social studies teacher. Doran saw the postings and immediately contacted the district to claim either position as a matter of statutory right based on Minnesota Statutes section 123A.33, subdivision 8 (2012). Superintendent Rod Thompson told Doran that he did not have a right to either job but invited him to apply anyway. Doran applied but the district hired others instead. Doran successfully sought other employment (a full-time position teaching social studies in Burnsville that commenced at the start of the 2012–2013 school year). In this certiorari appeal, Doran challenges the Shakopee Independent School District's decision not to hire him for one of the two posted positions at its new area learning center.

## ISSUES

I. Is the dispute in this certiorari appeal moot because the appealing teacher obtained full-time teaching employment elsewhere?

II. Did the school district violate Minnesota Statutes, section 123A.33, by refusing to hire the ·teacher to one of the positions he claimed?

## ANALYSIS

### I

██ The Shakopee Independent School District maintains that Doran's present challenge to its decision not to hire him after he asserted his right to one of the two open positions is moot because he has been hired for an equivalent position in Burnsville. The argument is not persuasive. The district's legal premise is correct: we decide only actual controversies and do not issue advisory opinions

over moot issues. *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). But a case is moot only if "the party seeking relief has already obtained it, or the controversy is no longer of any practical significance." *In re Application of Minnegasco,* 565 N.W.2d 706, 710 (Minn.1997). The controversy here continues to have practical significance even after Doran got the Burnsville teaching job. Doran began only as a probationary teacher in Burnsville, vulnerable to nonrenewal. This arrangement differs from his arrangement in Shakopee had he been hired for one of the positions he claimed. *See* Minn.Stat. § 123A.33, subd. 8(d) ("A teacher appointed according to this subdivision is not required to serve a probationary period."). He would have received "credit on the appointing district's salary schedule for [his] years of continuous service under contract with the cooperative." *Id.* Additionally, his previously accumulated sick leave and severance benefits would have both transferred from the cooperative to his new position in the district. *Id.* Because the district has not shown that the controversy lacks practical significance, the appeal is not moot.

## II

■ We now address Doran's challenge to the school district's decision, which we will affirm unless it is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, beyond the decision-maker's jurisdiction, or based on an erroneous theory of law. *Harms v. Indep. Sch. Dist. No. 300,* 450 N.W.2d 571, 574 (Minn.1990). Doran maintains that the school district's refusal to assign him to either of the claimed positions results from the district's misconstruction of the controlling statute. Questions of statutory construction are legal questions, which we review de novo. *Lee v. Lee,* 775 N.W.2d 631, 637 (Minn.2009).

Doran argues that Minnesota Statutes section 123A.33, subdivision 8, required the school district to hire him because the cooperative placed him on the unrequested leave of absence after the school district partially withdrew from the cooperative. The school district argues that the statute does not require it to hire Doran because the statute includes a causation element not met here. Specifically, it contends that because no action or decision of the school district caused the cooperative to put Doran on leave, the statute does not require the district to hire him on his claim to one of its open positions. It also argues that a partial withdrawal is not enough to trigger the statute's mandatory-hire provision.

Both parties recognize that the answer to both issues hangs on the construction of Minnesota Statutes section 123A.33, subdivision 8, which reads in relevant part as follows:

(a) This subdivision applies to a teacher who is placed on unrequested leave of absence, according to section 122A.40, subdivision 10 or 11, in the year in which the cooperative provides the notice required by subdivision 4, clause (2), by a cooperative from which a member district is withdrawing.

This subdivision applies to a district that ... provides essentially the same instruction provided by the cooperative to pupils enrolled in the withdrawing district.

(b) A teacher shall be appointed by a district to which this subdivision applies to an available teaching position which:

(1) is in a field of licensure in which pupils enrolled in the withdrawing district received instruction from the cooperative; and

(2) is within the teacher's field of licensure.

. . . .

(c) A board may not appoint a new teacher to an available teaching position unless no teacher holding the requisite license on unrequested leave from the cooperative has filed a written request for appointment.

### Causal Relationship Not Required

■ The school district first urges us to read into this statute a precondition to its requirement that a district hire a teacher displaced by the cooperative: that the district's withdrawing from the cooperative must be the reason the cooperative placed the teacher on leave. Because that causal precondition did not occur here, argues the district, it had no duty to hire Doran while he was on leave from the cooperative. The district adds that the question of causation is resolved in its favor because Doran failed to challenge—and therefore acquiesced to—the cooperative's statement that the district's withdrawal was *not* the reason it was placing him on leave.

Our duty when construing a statute is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). When we can, we base our construction entirely on the words of the statute without looking beyond them for greater underlying purpose. That is, we give effect to the plain meaning when the words are not ambiguous, and we follow the legislature's preference to apply only "the letter of the law" rather than to disregard the letter in search of what we suppose is the spirit behind it. *Id.*

Looking carefully at the plain language of section 123A.33, subdivision 8, we do not see the causal prerequisite that the district urges. A teacher enjoys the right to claim an open teaching position in a qualifying school district if the teacher is displaced from his job by an educational cooperative's decision to put the teacher "on unrequested leave of absence . . . in the year in

which the cooperative provides the [required] notice . . . by a cooperative from which a member district is withdrawing." So the statute includes an express *temporal* precondition linking the cooperative's leave decision to the district's withdrawal decision ("in the year in which the cooperative provides the notice"), but it lacks any express *causal* precondition linking the two decisions.

■ We do not add words that the legislature omitted, even if adding them better articulates what we might suppose is the legislature's policy objective underlying the statute. *See Christiansen v. Univ. of Minn. Bd. of Regents,* 733 N.W.2d 156, 159 (Minn.App.2007) ("[T]his court cannot add to a statute what the legislature has either purposely omitted or inadvertently overlooked"), *review denied* (Minn. Aug. 21, 2007). And in this case, we have some evidence that adding a causal condition would be inconsistent with legislative intent. Two subdivisions later, addressing a different class of employees, the legislature demonstrated that it knows how to word a causal condition when it wants to include one:

A nonlicensed employee of a cooperative whose active employment is discontinued or reduced *as a result of* the withdrawal of a member district from the cooperative shall be appointed by the withdrawing member district to a position that is created within 36 months of the withdrawal and is created as a result of the withdrawal of the member district.

Minn.Stat. § 123A.33, subd. 10 (2012) (emphasis added). The legislature's having expressly included the operative causal language in subdivision 10 for one class informs us that it is not by accident that it omitted the language in subdivision 8 for a different class. We hold that when a school district withdraws from member-

ship in an educational cooperative that has placed a teacher on an unrequested leave of absence, the teacher's statutory right to claim an open teaching position under section 123A.33, subdivision 8, does not depend on the withdrawal having caused the leave.

This holding leads us also to reject the district's related argument. The district would have us dispose of the appeal because Doran supposedly acquiesced in the cooperative's statement to him that his leave was "*not* the result of . . . the withdrawal from a program by a member district from the [cooperative]." When the cooperative put Doran on leave, it informed him of his right to a hearing and that "[i]f no hearing is requested within [fourteen days], it shall be deemed acquiescence by [Doran] to the Governing Board's proposed action." Doran requested a hearing, but he later withdrew the request. Relying on supreme court precedent, the school district contends that this withdrawal conceded the reason for the leave. The supreme court has explained, "[i]f no hearing is requested, the person affected by the proposed action is deemed to have acquiesced therein." *Roseville Educ. Ass'n v. Indep. Sch. Dist. No. 623,* 391 N.W.2d 846, 851 (Minn.1986) ("The purpose of a subsequent hearing [in unrequested leave determinations], if requested, is to test the basis for that proposed determination.").

One difficulty with the school district's reliance on the *Roseville Education* case is that the district is asking us to render Doran's acquiescence to *the cooperative's* decision to put him on leave a basis to reject his present challenge to *the district's* decision not to hire him. This was not the situation in *Roseville Education,* where the teachers' acquiescence undermined their position in their certiorari appeal against the school district challenging

in court the same school-district decision that they had failed to challenge administratively. *Id.* at 849–50. It is not apparent to us that *Roseville Education* should apply to this case, essentially allowing a school district to immunize its own allegedly illegal decision not to hire a displaced teacher based on the teacher's choice not to challenge a different entity's prior decision to place him on leave.

But we reject the district's reliance on *Roseville Education* on a narrower ground. In *Roseville Education,* unlike in this case, the imputed acquiescence to the challenged underlying decision resolved the legal question on appeal, which was the validity of the reasons the teachers had been placed on leave. *Id.* at 851. Here, the cooperative stated the cause for Doran's leave and added only that the district's withdrawal was not one of them. But whether Doran acquiesced in that negative declaration about causation does not defeat his appeal here because, as explained, his statutory right to claim a position in the district does not depend on his ability to prove causation.

### Complete Withdrawal from Cooperative Not Required

■ The school district argues that because it never withdrew from the cooperative it had no duty to hire Doran to fill the position he claimed. A school district's "withdrawal" from an educational cooperative "means a district's removal of its students from a program of instruction, counseling, or evaluation provided by a cooperative in order to provide the same educational services by other means." Minn.Stat. § 123A.33, subd. 1(c). The district argues that it did not withdraw from the cooperative because it merely reduced some of its cooperative services, while Doran argues that this partial withdrawal is sufficient to trigger his right to claim a

position in the district. Doran has the better ground.

The school district accurately highlights that we have previously held that a school district's duty to hire a displaced teacher on leave from a cooperative is triggered only by the district's complete rather than merely partial withdrawal from the cooperative. *See Ullom v. Indep. Sch. Dist. No. 112*, 515 N.W.2d 615, 617 (Minn.App.1994). But we decided *Ullom* before the legislature defined "withdrawal." In *Ullom*, we considered but rejected the argument that a district's withdrawal could mean only partial withdrawal. We did so with the caveat that, "[f]rom a policy standpoint, it is not apparent that it should matter whether a school district withdraws entirely from a cooperative or stops participating in one or more programs offered by a cooperative and begins providing those services on its own." *Id.* Nevertheless we affirmed the school district's decision not to recognize the complaining teacher's claimed rights under the statute because, unless it is qualified, the word "withdrawal" implies only a complete event. *Id.* We observed that, in the absence of a definition qualifying the term "withdrawal" otherwise, "[w]e cannot supply what the legislature purposely omits or inadvertently overlooks." *Id.* (quotation omitted).

But *Ullom* is not the last word; the legislature amended the statute after our decision, adding the definition that we noticed was missing, expressly defining withdrawal. *See* 1995 Minn. Laws 1st Spec. Sess. ch 3, art. 6, § 3, codified at Minn. Stat. § 123A.33, subd. 1(c). Under the definition, a school district now withdraws from a cooperative when it removes its students from "a program of instruction" that has been provided by a cooperative and that the district then provides by other means. *Id.* That a withdrawal now expressly includes the removing of stu-

dents even from "*a* program of instruction" rather than from *all* programs of instruction supplants our holding in *Ullom* and defeats the district's argument. We hold that a school district "withdraws" from an educational cooperative within the meaning of section 123A.33, subdivision 1(c), and triggers the teacher's statutory right to claim a job in the district, when the district removes its students from even one of several learning programs provided by the cooperative so that the district can provide that service by some other means.

The district argues relatedly that it did not withdraw from the cooperative because it is not providing the same educational services that the cooperative provided. It asserts for support that its area learning center is focused on science, technology, engineering, and math, while the cooperative's area learning center was not. And it asserts that the district's center does not serve all of the same students that the cooperative's center served. The argument overlooks the statute's concentration on three key events unrelated to those that the district emphasizes: (1) a school district's declaration that it will remove students from a cooperative's instructional program; (2) the cooperative's notice to a cooperative teacher in that same year that it is placing the teacher on unrequested leave; and (3) the teacher's claim to a qualifying teaching position in the district. *See* Minn.Stat. § 123A.33, subd. 8. The statute does not direct us to consider the school district's eventual academic focus or the extent of any eventual exodus of students from the cooperative's program to the district's.

Looking to the three noted statutorily relevant events, the following occurred bearing on the first: the district board voted unanimously "to end the [cooperative] Area Learning Center Agreement for the 2012–13 School Year" and "to plan for

a Shakopee Area Learning Center as of September 1, 2012." The district wrote to notify the cooperative that it "intends to provide service for Shakopee Public School student[s] at an [area learning center] program operated by the district. As a result, the district will no longer be seeking to purchase services for the [cooperative] for [area learning center] students." And it declared, "This will become effective August 15, 2012." It thanked the cooperative in advance for assisting in the "transition." In other words, the district declared that it was removing its students from the cooperative's instructional program (the cooperative area learning center) and replacing it with its own (the district area learning center).

The following bears on the second relevant event: the cooperative wrote to Doran—a teacher who had taught social studies for 15 years at the cooperative's area learning center, serving district students— informing him in April 2012 that, effective the end of the 2011–2012 school year, he would be placed on unrequested leave of absence without pay because of "discontinuance of position, lack of pupils, and financial limitations."

And the following circumstances bear on the third relevant event: the district intended to employ a teacher licensed to teach social studies at its area learning center. The district then posted two positions for which Doran contends (without dispute) he is properly licensed to fill— dean of students and teacher of social studies. Doran claimed and then applied for both positions, but the district hired others instead.

These circumstances fit the language of section 123A.23, subdivision 8, squarely. Doran was "a teacher who is placed on unrequested leave of absence" based on the letter the cooperative provided him. The cooperative was "a cooperative from which a member district is withdrawing" because the district's letter to the cooperative announced the "district's removal of its students from a program of instruction . . . provided by a cooperative," specifically, the cooperative's area learning center, "in order to provide the same educational services by other means," specifically, by the district's own area learning center. The district's announcing the withdrawal occurred "in the [same] year" that the cooperative placed Doran on leave. The statute applies to the district because, based on its decision that its new area learning center would provide social studies educational services to the students who had been receiving the social studies educational services at the cooperative's area learning center, it would "provide[ ] essentially the same instruction provided by the cooperative to pupils enrolled in the withdrawing district." That the district had an increased focus on science and math is not inconsistent with application of the statute. Doran is therefore a "teacher [who] shall be appointed by [the] district . . . to an available teaching position which . . . is in a field of licensure in which pupils enrolled in the withdrawing district received instruction from the cooperative . . . and . . . is within the teacher's field of licensure."

## DECISION

The school district erroneously construed the law when it reasoned that Doran's statutory right to claim an open position in the district depended on a causal relationship between the district's withdrawal and Doran's placement on an unrequested leave of absence. And it misconstrued the law when it reasoned that a school district withdraws from an educational cooperative only when it removes its students from all learning programs provided by the cooperative. We there-

fore reverse and direct the school district to offer Doran one of the positions he claimed under Minnesota Statutes section 123A.33.

**Reversed.**