*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0233**

State of Minnesota,
Respondent,

vs.

Taeng Yang,
Appellant.

**Filed February 6, 2017
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CR-15-4629

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Tracy M. Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Ramsey County jury found Taeng Yang guilty of felony domestic assault and terroristic threats based on evidence that he beat his wife and threatened to kill her. On

appeal, he argues through counsel that the district court erred by denying his pre-trial request for a different public defender, by allowing the state to introduce relationship evidence, by ruling that the state could impeach him with a 2013 burglary conviction, and by submitting the issue of guilt and the issue of aggravated sentencing factors to the jury at the same time. Yang makes additional arguments for reversal in a *pro se* supplemental brief. We affirm.

## FACTS

Yang and B.H. were united by a Hmong cultural marriage, which was arranged by their families. They have one child together, who was born in March 2013. In 2015, Yang, B.H., and their child lived in a three-bedroom home that they shared with Yang's parents and Yang's siblings and their children. B.H. was employed and relied on family members for transportation to and from work because she did not have a driver's license.

The events giving rise to this appeal occurred during the evening of June 7, 2015. B.H. finished work at 8:00 p.m. Yang picked her up one to two hours later. He later picked up his brother-in-law, V.V., and a friend, T.L. The group arrived at Yang and B.H.'s home between 11:00 p.m. and midnight and went to the bedroom that Yang, B.H., and their child shared.

Yang and B.H.'s child had been in the care of Yang's parents while B.H. was at work and was still awake when B.H. arrived home. The child was "cranky" and needed a bottle in order to sleep. Yang told B.H. that the bottle was missing. B.H. asked Yang to take her to the store to buy a new bottle and milk. Yang and B.H. began to argue, and the argument escalated. V.V. and T.L., who were still in the bedroom, supported Yang. When

2

B.H. attempted to leave the bedroom with the child, T.L. and V.V. blocked the doorway. Yang told B.H. to sit on the bed, but she resisted because she feared for her safety. Yang slapped B.H. on her knee with a shoe and pulled her hair. Either Yang or V.V. pushed B.H. to the ground while she held the child. Yang got on top of B.H. and punched her face and arms with his closed fist. Yang threatened to "take [B.H.] to the forest and kill [her]."

When Yang's sister opened the bedroom door, B.H. fled with the child. She ran to a nearby corner store, which was closed. She hid with the child between parked cars in the parking lot, called the police, and stayed there until two officers arrived.

The state charged Yang with one count of felony domestic assault, in violation of Minn. Stat. § 609.2242, subd. 4 (2014). The state later amended the complaint by adding one count of terroristic threats, in violation of Minn. Stat. § 609.713, subd. 1 (2014). Before trial, the state served notice of its intent to seek an aggravated sentence based on aggravating factors, including the following allegations: the offense was committed in the actual presence of a child; the child heard, saw, or otherwise witnessed the offense; and B.H. was particularly vulnerable due to the child's presence.

The case went to trial in September 2015. The state called six witnesses: B.H., the emergency-room nurse who treated B.H., B.H.'s treating physician, the 911 operator, and the two police officers who responded to B.H.'s call. The defense called three witnesses: Yang's sister, father, and mother. Yang attempted to call V.V. and T.L., but both men asserted their Fifth Amendment rights against self-incrimination. Yang did not testify.

The district court submitted the issue of guilt to the jury along with the issue of aggravating sentencing factors. The jury found Yang guilty of both charges. The jury also

3

found that the state proved three aggravating sentencing factors. The district court sentenced Yang to 60 months of imprisonment, a double-upward departure from the presumptive guidelines range. Yang appeals.

## DECISION

### I. Request for Substitution of Appointed Counsel

Yang first argues that the district court erred by denying his pre-trial request for the appointment of a different public defender.

A criminal defendant has a constitutional right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. A criminal defendant is entitled to appointed counsel if the defendant cannot afford to retain counsel. *Gideon v. Wainwright*, 372 U.S. 335, 339-45, 83 S. Ct. 792, 794-97 (1963); *State v. Munt*, 831 N.W.2d 569, 586 (Minn. 2013). An indigent defendant's right to appointed counsel "is not an 'unbridled right to be represented by counsel of [the defendant's] choosing.'" *Munt*, 831 N.W.2d at 586 (alteration in original) (quoting *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970)). If an indigent defendant requests a substitution of appointed counsel, a district court should grant the request only if it is "timely and reasonably made" and if exceptional circumstances exist. *Id.* (quotation omitted). "Exceptional circumstances" warranting substitution of counsel "are those that affect a court-appointed attorney's ability or competence to represent the client." *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001). If a defendant voices "serious allegations" regarding counsel's ability or competence, "the district court should conduct a 'searching inquiry' before determining whether the defendant's complaints warrant the appointment of substitute counsel." *Munt*, 831 N.W.2d

4

at 586 (quoting *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006)). This court applies an abuse-of-discretion standard of review to a district court's denial of a request for substitution of appointed counsel. *Id.*

In this case, Yang asked the district court to appoint substitute counsel at the first omnibus hearing, which was the day that he met his appointed public defender. His appointed counsel raised the issue with the district court by stating that Yang wished to speak to the court concerning his representation. Yang quickly described a conversation with his appointed counsel in which they had a disagreement concerning whether he was a member of a gang. The district court interrupted Yang and encouraged him to refrain from disclosing his confidential conversations with counsel. When Yang persisted, the district court stated that the request was denied. Thereafter, Yang appeared at two subsequent pre-trial hearings and at trial without ever renewing his request for substitution of counsel.

The thrust of Yang's argument is that the district court erred by not making a full inquiry into his reasons for making the request for a different public defender. He does not argue that he demonstrated exceptional circumstances. Rather, he asserts that, after a proper inquiry, which might have elicited more information, the district court "might have determined" that exceptional circumstances exist. He requests relief in the form of a remand to the district court for a hearing at which he could "make a full record about his concerns with trial counsel."

We do not agree with Yang that the district court did not conduct a proper inquiry. Under the circumstances, the inquiry was not lacking. The district court obviously was aware that Yang was appearing for an omnibus hearing and likely was aware that the public

5

defender had only recently been appointed. Furthermore, Yang had divulged a fair amount of information to the district court, which was sufficient for the district court to determine that his concerns were not based on exceptional circumstances but, rather, the types of concerns that are deemed to be mere dissatisfaction with counsel. *See Gillam*, 629 N.W.2d at 449. Yang is correct in asserting that the district court made its ruling quickly. But in light of the circumstances, Yang has not demonstrated that the district court abused its discretion by not gathering more information about Yang's request for a different public defender. Furthermore, Yang did not raise the issue again thereafter, which indicates that he acquiesced to appointed counsel's ongoing representation. *See Munt*, 831 N.W.2d at 587.

Thus, the district court did not err by denying Yang's request for substitution of appointed counsel.

## II. Relationship Evidence

Yang argues that the district court erred by allowing the state to introduce evidence about the relationship between B.H. and him.

In general, "Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But such evidence may be admissible for another purpose, such as evidence of past abuse or threats against the victim in order to show a strained relationship. *State v. Bauer*, 598 N.W.2d 352, 364 (Minn. 1999). "Character evidence which tends to show the 'strained relationship' between the accused and the victim is relevant to establishing motive and intent and is therefore admissible." *State v. Mills*, 562 N.W.2d 276, 285 (Minn. 1997).

6

Evidence of a defendant's prior acts also may be relevant "for the purpose of illuminating the relationship of defendant and complainant and placing the incident with which defendant was charged in proper context." *Bauer*, 598 N.W.2d. at 364 (quotation omitted). In addition, in a prosecution for domestic assault:

> Evidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20 (2014); *see also State v. Fraga*, 864 N.W.2d 615, 627 (Minn. 2015); *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). Evidence admitted pursuant to section 634.20 is commonly known as "relationship evidence." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). The supreme court has determined that the "interests of justice are best served" when relationship evidence is admitted if it would provide context for the crime charged. *Id.* at 553 (quotation omitted). This is so because domestic conduct often occurs in private, "frequently involves a pattern of activity that may escalate over time," and its victims often do not report its occurrence. *Id.* (quoting *McCoy*, 682 N.W.2d at 161). Section 634.20 applies only in domestic-violence cases, *see State v. Barnslater*, 786 N.W.2d 646, 650 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010), and "allows much more latitude" than the exception to rule 404(b), *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008). This court applies an abuse-of-discretion standard of review to a district court's admission of relationship evidence. *Matthews*, 779 N.W.2d at 553.

In this case, the district court ruled on the relationship evidence before trial, finding that the evidence would "explain and highlight for the jury a history of the relationship of abuse or threatening behavior" and that its probative value substantially outweighed the potential for unfair prejudice. The state presented its relationship evidence through B.H. She testified that Yang was "always angry" and "controlling" and that he never allowed her to leave the house. She testified that Yang had threatened her life several times and had hit her in the presence of other persons. As an example, B.H. testified that when she was pregnant, Yang used a hammer to hit her on her head, ankle, and knee and covered her mouth so that she could not breathe or cry for help. After that event, she sneaked out of the house and stayed with her family for several weeks, until her father asked her to return to Yang because he "didn't want to look bad." B.H. also testified that, on one occasion when Yang was driving and V.V. was in the vehicle, Yang threatened her and punched her several times on her back, shoulder, and arms. B.H. testified further that, since the events underlying this case, she obtained an order for protection against Yang and does not communicate with her family out of fear that they will make her return to Yang.

Yang contends that the district court erred because the probative value of the state's relationship evidence was far outweighed by its prejudicial effect. He notes that B.H. willingly testified for the state and that the two eyewitnesses, V.V. and T.L., did not testify because the state did not offer them immunity. In response, the state contends that the relationship evidence indicates that Yang has a propensity to assault B.H. in the presence of others and also shows that B.H. was pressured to remain with Yang despite a troublesome relationship.

8

We agree with the state that the admission of the relationship evidence in this case is justified. We also note that the relationship evidence was probative in that it helped the jury evaluate the testimony of B.H. and the defense witnesses. *See Matthews*, 779 N.W.2d at 549 (stating that relationship evidence may be probative by helping jury assess witness credibility); *State v. Lindsey*, 755 N.W.2d 752, 756-57 (Minn. App. 2008) (same), *review denied* (Minn. Oct. 29, 2008). We further note that the district court gave the jury a limiting instruction before the evidence was presented and again before deliberations. *See Barnslater*, 786 N.W.2d at 653 (stating that district court "should instruct the jury regarding the proper use of relationship evidence").

Thus, the district court did not err by allowing the state to introduce relationship evidence.

### III. Impeachment Evidence

Yang argues that the district court erred by allowing the state to impeach him by introducing evidence that he was convicted of burglary in 2013.

In general, "Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But evidence of a defendant's prior conviction is admissible for impeachment purposes if the crime is punishable by more than one year in prison and the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a); *State v. Williams*, 771 N.W.2d 514, 518 (Minn. 2009). A district court must consider the five *Jones* factors when determining whether the probative value of impeachment evidence outweighs its prejudicial effect: "'(1) the impeachment value of the prior crime, (2) the date of the

9

conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime . . . , (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue.'" *State v. Hill*, 801 N.W.2d 646, 653 (Minn. 2011) (alteration in original) (quoting *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978)). This court applies an abuse-of-discretion standard of review to a district court's decision to admit evidence of a defendant's prior conviction for impeachment purposes. *Hill*, 801 N.W.2d at 651.

In this case, the state gave notice before trial that it intended to impeach Yang with prior felony convictions, including a 2013 burglary conviction. The district court reasoned that "the impeachment value is great because it's within two years of this offense, . . . is a felony, . . . shows disregard for the law," and "is not similar to" the charged offense. The district court also reasoned that the prejudicial effect outweighs the probative value and that "[c]redibility will be an issue since it will be a he said, she said if it gets to that point or if other witnesses take the stand and get into credibility." Defense counsel objected on the grounds that "disregard for the law" is not an appropriate ground for impeachment. The district court clarified that "a felony conviction is probative of a witness's credibility."

Yang contends that the district court erred in its assessment of two of the *Jones* factors, the first factor and the fourth factor. With respect to the first factor, Yang renews his argument that "disregard for the law" has no impeachment value. But the supreme court has said that "*any* felony conviction is probative of a witness's credibility because it allows the fact-finder to see the whole person and his general lack of respect for the law." *State v. Zornes*, 831 N.W.2d 609, 627 (Minn. 2013) (internal quotations omitted). Yang

10

suggests that this court should not apply *Zornes* because its application always renders the first *Jones* factor favorable to the admission of impeachment evidence and invites the jury to make inferences based on a person's propensity to commit crimes. In light of the pre-existing caselaw, the district court did not err in its consideration of the first *Jones* factor.

With respect to the fourth factor, Yang contends that his testimony was critically important because V.V. and T.L., the only eyewitnesses, did not testify in his defense. The district court made its ruling on this issue before V.V. and T.L. asserted their Fifth Amendment rights and elected to not testify. But the jury heard testimony from Yang's other witnesses, all of whom were present in the home during the alleged assault and contradicted B.H.'s version of events. In any event, the supreme court has stated, "If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006). It is undisputed that credibility was a central issue at trial. The district court, in considering the fourth and fifth factors, characterized the case as a "he said, she said" case, and Yang admits in his principal brief that "[t]his case boiled down to whether the jury believed [B.H.] or Yang." Again, in light of the pre-existing caselaw, the district court did not err in its consideration of the fourth *Jones* factor.

Thus, the district court did not err by allowing the state to use Yang's 2013 burglary conviction as impeachment evidence.

## IV. Request for a Bifurcated Trial

Yang argues that the district court erred by submitting the issue of guilt and the issue of aggravated sentencing factors to the jury in a unitary trial rather than a bifurcated trial.

11

This procedural issue is governed by both statute and rule. By statute, the state has an unqualified right to present the issues separately in a bifurcated trial: "Upon the request of the prosecutor, the court shall allow bifurcated argument and jury deliberations." *See* Minn. Stat. § 244.10, subd. 5(b) (2014). If, however, the state requests a unitary trial, the district court must grant the state's request for a unitary trial if the state's evidence supporting the aggravating factors "(1) would be admissible as part of the trial on the elements of the offense; or (2) would not result in unfair prejudice to the defendant." *Id.* But the district court must deny the state's request for a unitary trial and conduct a bifurcated trial if the state's evidence supporting the aggravating factors "(1) includes evidence that is otherwise inadmissible at a trial on the elements of the offense; and (2) would result in unfair prejudice to the defendant." *Id.* § 244.10, subd. 5(c). In light of these two provisions, if the state's evidence supporting the aggravating factors also is admissible for purposes of determining whether the defendant is guilty, the district court's decision whether to conduct a unitary or bifurcated trial depends on whether a unitary trial would "result in unfair prejudice to the defendant." *See id.* § 244.10, subd. 5(b), (c); *see also* Minn. R. Crim. P. 11.04, subd. 2(b). This court applies an abuse-of-discretion standard of review to a district court's decision to conduct a unitary trial. *State v. Laine*, 715 N.W.2d 425, 433 (Minn. 2006).

In this case, the state requested a unitary trial at the instructions conference, after all the evidence had been introduced. Specifically, the state asked the district court to give the jury a special verdict form that included both a question as to whether the state proved that Yang is guilty and also questions as to whether the state proved each of three alleged

12

aggravating factors. Defense counsel objected, arguing that allowing the jury to consider the aggravating factors contemporaneously with the issue of Yang's guilt would be unfairly prejudicial. The district court granted the state's request for a unitary trial, stating, "I do not find that what is listed on the verdict forms at this time would establish unfair prejudice to the defendant since [the jury has] already heard evidence that the child was present . . . during the commission of the crime."

Yang contends that the unitary trial was prejudicial because "asking the jurors to consider whether the state proved aggravating factors at the same time as it is deciding whether the state proved guilt beyond a reasonable doubt encourages the jury to focus its attention on the most prejudicial evidence against the defendant." Yang elaborates by contending that, in closing argument, "A defendant is forced to choose between ignoring the aggravating factors, and pursuing solely a not guilty theory, or presenting an inconsistent closing argument of 'the defendant is not guilty, but if he is, the state failed to prove aggravating factors.'"

We recognize the potential for undue prejudice in this general situation, but we believe that the potential for undue prejudice was not realized in this case. The evidence supporting the aggravating factors (that Yang and B.H.'s child was present) was naturally part of the essential facts of the case. Every witness who was present in the home during the alleged assault testified to the presence of the child. But no witness testified that Yang took any action directly against the child. In cross-examining B.H., Yang's counsel challenged her testimony based on her underlying frustration with the marriage and her lack of physical injuries. During the evidentiary phase of trial, the jury was not told that it

13

would be asked to make any findings concerning the presence of the child. Accordingly, the jury had no particular reason to focus on the presence of the child during witness testimony. The instructions and the special verdict form asked the jury to consider three questions related to the presence of the child only if it were to find Yang guilty. The language used in those three questions was not especially prejudicial: (1) "Was the offense committed in the actual presence of a child?" (2) "Did the child see, hear or otherwise witness the offense?" (3) "Was [B.H.] particularly vulnerable due to the child's presence during the commission of the crime because of the victim's responsibility to the child?" In light of the circumstances of this case, the district court did not abuse its discretion by determining that a unitary trial would not result in unfair prejudice to Yang.

Thus, the district court did not err by submitting the issue of guilt and the issue of aggravated sentencing factors to the jury in a unitary trial rather than a bifurcated trial.

### V. *Pro Se* Arguments

Yang raises four additional issues in his *pro se* supplemental brief. First, he argues that the district court erred by preventing him from calling V.V. and T.L. as witnesses at trial. He contends that the district court violated his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor and his right to present a complete defense, which is guaranteed by the Due Process Clause of the Fourteenth Amendment. *See State v. Jenkins*, 782 N.W.2d 211, 225-26 (Minn. 2010). The district court did not prevent Yang from calling V.V. and T.L. as witnesses at trial. In fact, Yang took advantage of his right to compulsory process by serving subpoenas on both V.V. and T.L., both of whom appeared in the courtroom. But each man asserted his Fifth Amendment right

14

against self-incrimination and elected to not testify. A witness's decision to invoke his constitutional right to not testify does not violate a defendant's Sixth Amendment right to compulsory process. *State v. Graham*, 764 N.W.2d 340, 349 (Minn. 2009); *State v. Moose*, 266 N.W.2d 521, 525 (Minn. 1978). Furthermore, a district court violates a defendant's constitutional right to present a complete defense only if the district court excludes evidence based on an evidentiary rule that "infringe[s] upon a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [the rule is] designed to serve." *State v. Pass*, 832 N.W.2d 836, 841-42 (Minn. 2013) (alterations in original) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324-25, 126 S. Ct. 1727, 1731 (2006)).

Second, Yang argues that he received ineffective assistance of counsel and that the district court erred by denying his request for substitute counsel. He contends that his trial counsel was ineffective by not ensuring that he could call V.V. and T.L. as witnesses at trial. As stated above, V.V. and T.L. asserted their respective Fifth Amendment rights against self-incrimination and elected to not testify. Yang does not attempt to explain how his trial counsel could have required them to testify. Yang's ineffectiveness argument is "nothing more than an argumentative assertion without factual support" and, thus, without merit. *Leake v. State*, 737 N.W.2d 531, 543 (Minn. 2007). In addition, we already have considered the district court's decision to deny Yang's request for substitution of counsel and have concluded that there was no error. *See supra* part I.

Third, Yang argues that the evidence is insufficient with respect to both the domestic-assault charge and the terroristic-threats charge. He contends that, with respect to the domestic-assault charge, the state did not prove the existence of a prior qualifying

15

domestic-abuse-related conviction, as required for a felony-level conviction. But such evidence was unnecessary because Yang stipulated to having two prior qualifying domestic-abuse-related convictions. Yang contends that, with respect to the terroristic-threats charge, the state did not prove that B.H. was injured. But the state did not need to prove an actual injury because that is not an element of the offense. *See* Minn. Stat. § 609.713, subd. 1 (2014).

Fourth, Yang argues that being convicted on both charges violates the Double Jeopardy Clause of the United States Constitution and state statutes protecting against multiple convictions and multiple punishments. Yang's constitutional double-jeopardy argument fails because the Double Jeopardy Clause protects against successive prosecutions for the same offense, not against a single prosecution with multiple charges. *See United States v. Ursery*, 518 U.S. 267, 273, 116 S. Ct. 2135, 2139-40 (1996); *Hankerson v. State*, 723 N.W.2d 232, 236-37 (Minn. 2006). Yang's statutory argument also fails. The adjudications of guilt on both charges does not violate the statutory prohibition on being found guilty of both an offense and a lesser-included offense because the terroristic-threats offense is not a lesser-included offense with respect to the domestic-assault offense. *See* Minn. Stat. § 609.04, subd. 1 (2014) (proscribing convictions of both charged crime and lesser-included offense); *see also State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006) (analyzing elements of two offenses to determine whether lesser-included offense is "necessarily included in greater offense"); *compare* Minn. Stat. § 609.2242, subd. 1 (2014), *with* Minn. Stat. § 609.713, subd. 1. Similarly, the district court did not violate the statutory prohibition on multiple punishments because the district court imposed

16

a sentence only on the domestic-assault offense and did not impose a sentence on the terroristic-threats count. *See* Minn. Stat. § 609.035, subd. 1 (2014); *see also Langdon v. State*, 375 N.W.2d 474, 476 (Minn. 1985) (stating that "punishments" in section 609.035 refers to sentences, not to convictions).

Thus, Yang's *pro se* supplemental brief does not establish that he is entitled to appellate relief.

**Affirmed.**